[L. A. No. 9134. In Bank.—March 4, 1927.]

FRANCIS S. HAINES et al., Respondents, v. COMMERCIAL MORTGAGE COMPANY (a Corporation) et al., Appellants.

[1] USURY LAW—CONSTRUCTION—LIMIT OF INTEREST — COMPOUND INTEREST.—Under the "Usury Law" (Stats. 1919, p. lxxxiii), the maximum rate of twelve per cent per annum on the amount loaned is the full measure of all profit to the lender, and without the right to compound the interest; but it is competent for the parties to contract in writing for compound interest where in so doing the maximum rate of twelve per cent without such compounding would not be exceeded.

[2] ID.—SERVICES AND EXPENSE OF LENDER—RIGHT OF REIMBURSEMENT.
Under the "Usury Law," the lender may perform services or incur
expenses in connection with the loan which will entitle him to reim-
burse himself from the fund about to be loaned, but these items
must be confined to specific service or expense incidental to the
loan, incurred in such a way as to absolutely preclude its being
merely a device through which additional interest or profit on the
loan may be exacted, and a court will carefully scrutinize the whole
transaction and declare its substance regardless of its form.

[3] ID.—EXCESS CHARGE.—Where a percentage charged on a loan by
the borrower in excess of the maximum percentage allowed by the
"Usury Law" cannot be allocated to any item of expense or ser-
vice for which the lenders would legitimately make a charge or
urge a claim, the loan is usurious and the lender forfeits all
claim to interest, and the borrower may recover not only treble the
excess but treble the entire amount of interest actually paid upon
the loan.

[4] ID. — AGREEMENT FOR EXCESS AMOUNT — FAILURE TO PAY — JUDG-
MENT.—Where the excess percentage agreed to be paid upon a
loan in addition to the maximum percentage allowed by the "Usury
Law" is not actually paid, it is not a proper item in a judgment
for treble the amount allowed by the statute to be recovered.

[5] ID.—PAYMENT—AGREEMENT FOR APPLICATION. — Where the parties
to a loan have by special and specific agreement agreed as to
what portion of a given payment shall be referred to principal
and what shall be referred to interest, the court will adopt this
understanding in applying the provisions of the "Usury Law."

[6] ID. — SUIT IN EQUITY TO DECLARE A FORFEITURE AND ENJOIN A
SALE—DISPOSAL OF ISSUES.—In a suit in equity to have a trans-
action declared in violation of the "Usury Act," the right to future
interest declared forfeited, that no part of the principal be de-
clared payable until the completion of the full period of time con-
templated by the note, that plaintiff recover treble the amount of
all interest paid, including treble the amount of the commission,
and that a sale of the premises securing the loan be enjoined until
the full period covered by the loan should have elapsed, the court
should assume full and complete jurisdiction in the premises and
make and state the account between the parties and make plenary
disposition of all the issues involved in the action.

[7] ID.—NATURE OF ACTION.—While the provision of the "Usury Law"
for a special right of action in the plaintiff for treble the amount

2. Expenses or charges incident to loan of money, note, 21
A. L. R. 797.
3. See 27 R. C. L. 274, 275.
5. See 27 R. C. L. 276.

of interest paid is in the nature of a penalty, the context of the act gives it more of the rating of an action for debt and, therefore, subject to offsets and counterclaims by defendants; and the plaintiffs in such an action waive the right to object to offsets and counterclaims by coming into a court of equity and praying for additional relief instead of the mere pronouncement of a judgment in forfeiture against the defendants.

[8] ID.—DOING EQUITY—TENDER.—There is no merit in the contention in such an action that plaintiffs must first do equity by tendering the principal and such other items, excluding interest, as may be due under the obligation, before suit may be maintained for treble the interest paid.

[9] ID.—NOTE PAYABLE IN INSTALLMENTS—USURIOUS INTEREST—APPLICATION OF PAYMENTS.—Where a promissory note provides for payment of principal and interest in monthly installments and that in default of payment of any installment when due the whole sum of principal and interest shall become immediately due and payable at the option of the holder of the note, if the agreement for payment of interest is usurious, all payments will be referred to the principal, but if default is made in the payment of an installment in full the note may be declared due and payable at the option of the holder.

[10] ID.—FORFEITURE—PRINCIPAL.—Under the "Usury Law" the legislative intent was not to declare the whole contract void on account of usurious interest, but only the portion thereof relating to interest, and the forfeiture of principal is not authorized by the statute. (On petition for rehearing.)

[11] ID. — CRIMINAL PROVISIONS — CONSTRUCTION. — Provisions of the "Usury Law" declaring the taking of usury a misdemeanor relate only to the question of interest and bear no relation whatever to the loan or repayment of the principal sum. (On denial of rehearing.)

[12] ID.—COMPOUNDING OF INTEREST.—The contention that the "Usury Law" allows the compounding of the interest, if not paid at the time provided for, as long as the limit of the rate of interest is maintained at twelve per cent per annum, cannot be maintained; but within the maximum limit the parties may contract freely in respect to interest and may compound it and also charge commission and bonuses, but such charges must, when added to the interest specified and spread over the whole period of forbearance, be kept within the limit set by the law; and in such case the contract at the maximum rate may not provide for interest upon any unpaid installment when due, nor at the maximum rate may interest be lawfully collected in advance; and if interest is deducted in advance from the amount of the loan, in testing the transaction for usury the principal sum loaned will be held to be

the amount of the loan less the interest or commission deducted in advance. (On denial of rehearing.)

[13] ID.—MAXIMUM INTEREST—TIME OF PAYMENT.—No legal objection exists to providing in a loan contract that it shall bear the maximum rate of interest, payable at the end of any particular period, such as monthly, quarterly, semi-annually, or annually, during the full period of forbearance, provided that such installments as fall due will be without accruing interest thereon, except upon a new contract and new consideration. (On denial of rehearing.)

[14] ID.—USURIOUS INTEREST—SUIT TO DECLARE FORFEITURE—TENDER —PLEADING.—In a suit in equity where the extent of the prayer covers two subjects only, to wit: Forfeiture of interest and forfeiture of the right to declare the debt due until the full period of time contracted for has elapsed, plaintiff is not required to tender the principal sum and such other items, excluding interest, as might be due under the obligation before suit can be maintained. (On denial of rehearing.)

---

(1) 39 Cyc., p. 962, n. 59, p. 965, n. 71.    (2) 39 Cyc., p. 918, n. 58, 59, p. 971, n. 98.    (3) 39 Cyc., p. 971, n. 4, p. 979, n. 46.    (4) 39 Cyc., p. 1090, n. 48.    (5) 39 Cyc., p. 1026, n. 76.    (6) 39 Cyc., p. 1026, n. 76.    (7) 39 Cyc., p. 1091, n. 61.    (8) 39 Cyc., p. 1090, n. 51.    (9) 39 Cyc., p. 989, n. 13.    (10) 36 Cyc., p. 1106, n. 29; 39 Cyc., p. 989, n. 14, 990–18, p. 1008, n. 46.    (11) 39 Cyc., p. 1096, n. 99.    (12) 39 Cyc., p. 965, n. 71.    (13) 39 Cyc., p. 965, n. 71, p. 968, n. 79.    (14) 39 Cyc., p. 1090, n. 51.

APPEAL from a judgment of the Superior Court of Los Angeles County. John L. Fleming, Judge. Reversed.

The facts are stated in the opinion of the court.

Schweitzer & Hutton and B. R. Ware for Appellants.

George L. Sanders for Respondents.

Woodruff & Shoemaker and Laurence W. Beilenson, *Amici Curiae* on Behalf of Appellants.

PRESTON, J.—Respondents, plaintiffs below, executed to appellant and defendant below, Commercial Mortgage Company, a note as follows:

"$34,000.00.          Los Angeles, California, July 2, 1924.

"In installments and at the times hereinafter stated, for value received, we, jointly and severally, promise to

pay to Commercial Mortgage Company, a corporation, or order, at its offices in Los Angeles, California, the principal sum of Thirty-four thousand and no/100 Dollars, with interest from date on the amount of principal remaining from time to time unpaid until said principal sum is paid at the rate of twelve per cent per annum. Principal and interest payable in monthly installments of Eight hundred and no/100 ($800) Dollars or more each on the first day of each and every month, beginning on the 1st day of September, 1924, and continuing until said principal and interest thereon have been fully paid. Each payment shall be credited first, on interest then due; and the remainder on the principal sum, and interest shall thereupon cease upon the amount so credited as the said principal sum. Should default be made in payment of any installment when due, then the whole sum of principal and interest shall become immediately due and payable at the option of the holder of this note. Principal and interest payable in Gold Coin of the United States, of the present standard. This note is secured by a certain Deed of Trust to Title Insurance and Trust Company, a corporation, of Los Angeles, California.

"I. R. Stamps $6.80 Affixed and Cancelled.

> "FRANCIS S. HAINES
> "MARY ORR HAINES
> "H. C. KETCHUM
> "MARIE C. KETCHUM."

A trust deed to secure payment was, as a part of the same transaction, executed to the other defendant and appellant, Title Insurance and Trust Company, as trustee. Eight monthly payments of $800 each were made on the said note at the times called for therein, of which said eight payments $2,953.11 in the aggregate was, by special agreement of the parties, referred to interest, and the remainder, aggregating $3,446.89, referred to payment on the principal. Default then occurred in said payments and the record discloses no payments thereon since said time. The legal steps necessary to declare the whole principal debt due were taken and foreclosure and sale of the property covered by the trust deed was about to be made when the present action was commenced.

The complaint filed on January 13, 1925, and as later amended, alleges that said transaction was usurious in that the defendant mortgage company exacted a commission of three per cent upon the loan, or $1,020, in addition to the twelve per cent per annum provided for in the said note. It also alleges the payment of an additional sum of $5 as an appraiser's fee. The prayer was that the loan be declared a transaction in violation of the Usury Act; that the right to future interest be declared forfeited; that no part of the principal be declared payable until the completion of the full period of time contemplated by the note; that plaintiffs recover treble the amount of all interest paid, including treble the amount of said commission of three per cent, or $1,020; that a sale of the premises be enjoined and forbidden until the fullness of the period covered by said loan should have elapsed; for costs of suit and for general relief.

The answer admits the execution of the note and trust deed; admits that a charge of three per cent on said principal amount, or $1,020, was charged and made a part of said note, but alleges that said amount was for "examination, views, fees, appraisals, commissions and all charges" in transacting the business of the loan as provided for in the so-called Usury Act. It denies specifically that any taint of usury inheres in said transaction and further pleads that defendants had ordered a sale under the trust deed; that the trustee had recorded the declaration of default not only for the whole of the principal and interest and trustee's charges, but also for the advances made on account of principal and interest on a prior encumbrance on the property covered by the trust deed.

The court sustained the contentions of plaintiffs and found that although the face of the note was $34,000, plaintiffs received but $32,980, the $1,020, or three per cent of the principal amount, being included in the note; that the plaintiff, H. E. Ketchum, called at the joint office of the defendant, Commercial Mortgage Company, and Commercial Loan Company, and there met in the office of Eugene Webb, Jr., an officer and director of both above-named loan companies, a man by the name of Ellsworth Pexton, who claimed to be acting for said Eugene Webb, Jr.; that said H. E. Ketchum there made and filed an ap-

plication in writing for a loan of $34,000, agreeing to pay said Webb a three per cent commission on said amount, and to give a note and trust deed by himself and coplaintiffs to secure payment. The court further found that the transaction was carried out in other respects as alleged in the complaint and in addition thereto found a prior encumbrance of $82,000 existing on the property and that defendant mortgage company, to prevent a foreclosure thereof, had paid on account of principal and interest thereon the sum of $7,974. The further findings material to this decision are found in the opening paragraphs hereof.

The court adjudged the transaction usurious and provided that plaintiffs have judgment for $11,919.33, being treble the item of $1,020 plus treble the aggregate amount of said items of interest, to wit: $2,953.11. The judgment further provided "that defendants are, and each is, hereby restrained and enjoined from foreclosing said trust deed and selling said security for any default in payment of any interest demand on said loan."

Counsel for appellants and also several *amici curiae* make spirited and vigorous attacks not only upon the validity of the Usury Act but, assuming it to be valid, upon the manner in which the court below administered the act in this case. Fortunately for the length of this opinion all of the points made against the validity of the Usury Act as a whole have been considered in the cases of *Wallace* v. *Zinman, ante,* p. 585 [254 Pac. 946], and *In re Washer, ante,* p. 598 [254 Pac. 951].

In the former we held the statute as a whole to be valid and without violence to any provision of the constitution, except that a certain clause thereof not involved in the case now before us was declared invalid. In the latter we also held abortive the effort found in the act to fix limitations upon the charges of loan brokers and agents. In both cases we held it to be the manifest intent of the act to forbid absolutely to the lender any profit whatever by way of commission, bonus or other kind of charge, if in so doing the maximum rate declared in the act was exceeded.

[1] A further consideration of the question leaves us entirely satisfied with these conclusions. If there is anything that is made clear and plain by the act, it is that the

maximum rate of twelve per cent per annum on the amount loaned is the full measure of all profit to the lender in connection therewith and this, too, without even the right in such case to compound the interest in any computation thereon. Of course, it is competent for the parties to contract in writing for compound interest where in so doing the said maximum rate of twelve per cent without such compounding would not be exceeded. Language in the act as follows, to wit: ''No person, company, association or corporation shall directly or indirectly take or receive in money, goods, or things in action, or in any other manner whatsoever, any greater sum or any greater value for the loan or forbearance of money, goods or things in action than at the rate of twelve dollars upon one hundred dollars for one year; and in the computation of interest upon any bond, note, or other instrument or agreement, interest shall not be compounded, nor shall the interest thereon be construed to bear interest unless an agreement to that effect is clearly expressed in writing and signed by the parties to be charged therewith . . . '' makes these conclusions unavoidable.

[2] Of course, we are by no means intending to hold that the lender may not perform services or incur expenses in connection with a loan which would entitle him to reimburse himself from the fund about to be loaned to the borrower, but we do mean to state that these items must be confined to specific service or expense incidental to the loan incurred- in such a way as to absolutely preclude its being merely a device through which additional interest or profit on the loan may be exacted, and in this connection the court will carefully scrutinize the whole transaction and declare its substance regardless of its form.

''It is true that in determining whether or not the transaction is usurious the court 'will disregard its form and look to the substance, and will condemn it if all of the requisites of usury are found to be present, despite any disguise it may wear.' *First National Bank* v. *Phares*, 70 Okl. 255 [21 A. L. R. 793, 174 Pac. 519]. See, also, a great number of cases cited in 21 A. L. R. 808 and 809; . . . '' (*Friedman* v. *Wisconsin Acceptance Corp.* (Wis.), 210 N. W. 831.)

*Blodgett* v. *Rheinschild,* 56 Cal. App. 728, 732 [206 Pac. 674], is in point as follows: "The $400 actually loaned to defendant was the property of plaintiff; the latter himself negotiated the loan directly with defendant—that is, there was no agent or intermediary in the transaction; there was, therefore, no occasion for the payment of a 'commission' by either the borrower or the lender. Designating the $20 as a 'commission' did not make it such. This word 'commission' was but a euphemism, employed in an attempt to justify the exaction of a greater sum for the loan than at the rate of $12 upon $100 for one year— the maximum amount that a lender is entitled to ask or receive since the present usury law was adopted at the general election held November 5, 1918. The device of a 'commission' has, therefore, the characteristics of a shift to circumvent and avoid the usury law. 'As a general rule, any benefit or advantage exacted by the lender from the borrower, whatever be its name or form, which, added to the interest taken or reserved, would yield to the lender a greater profit upon his loan than is allowed by law is deemed usury.' (39 Cyc. 971.)"

[3] The charge of three per cent in this case cannot be allocated to any item of expense or service for which the lender could legitimately make a charge or urge a claim. The court was fully warranted by the evidence in making the finding that it was a fee or bonus exacted in a manner so as to stamp it as an additional charge for interest on the loan. The loan, already loaded with the maximum interest charge, was supplemented by this item of $1,020, which said item was clearly a distinct usurious exaction from the borrower. We have no hesitancy in also holding that in such case the lender forfeits all claim to interest and the borrower may recover not only treble the excess but treble the entire amount of interest actually paid upon the loan, for the unmistakable declaration of the statute is to this effect. Besides similar statutes have been construed and practically without exception such has been the holding of the several courts. (*Tayloe* v. *Parker,* 137 N. C. 418 [49 S. E. 921]; *Sloan* v. *Piedmont Fire Ins. Co.,* 189 N. C. 690 [128 S. E. 2]; *Ardmore State Bank* v. *Thompson,* 57 Okl. 521 [164 Pac. 977]; *Waldner* v. *Bowdon State Bank,* 13 N. D. 604 [3 Ann. Cas. 847, 102 N. W. 169];

*First National Bank of Benton* v. *Watt,* 184 U. S. 151
[46 L. Ed. 475, 22 Sup. Ct. Rep. 457, see, also, Rose's U. S.
Notes] ; 27 R. C. L., pp. 274, 275, sec. 77.)

[4] In this connection, however, it should be observed
that the three per cent charge, totaling $1,020, was not
actually paid and is, therefore, not a proper item of said
judgment for trebling the amount thereof. The court gave
judgment for $11,919.33, which is treble the item of
$3,973.11, which latter item is composed of an interest
charge of $2,953.11 on the eight installments paid on the
notes, plus the commission or bonus charge of $1,020.
The only item appearing in the record that should have
been trebled is the item of $2,953.11. The item of $1.020
simply becomes surplusage and not only cannot be collected
but cannot be the basis of apportionment for either prin-
cipal or interest, and the payments on account of princi-
pal will serve to reduce the net principal and will not be
construed as a payment of said charge of $1,020, either
in whole or in part. To authorize the infliction of the
penalty the interest must, of course, be paid. (*Coulter* v.
*Collins,* 71 Cal. App. 381 [235 Pac. 465] ; 27 R. C. L., p.
275, sec. 78.) [5] In this connection it is also true that
where the parties have by special and specific agreement,
as in the case at bar, agreed as to what portion of a given
payment shall be referred to principal and what shall be
referred to interest, the court will adopt this understand-
ing in applying the provisions of the Usury Law. (27
R. C. L., p. 276, sec. 79.) The holding, therefore, that
plaintiff was entitled to $11,919.33 is not supported by the
evidence and was, therefore erroneous.

In this behalf it is contended by appellant that the court
precluded it from showing that the three per cent charge
was for actual services rendered to the borrower by the
lender. There is no substance in this claim. The facts
surrounding the charge of three per cent were fully ex-
ploited. The only ruling in any way curtailing the defend-
ants was disallowing evidence as to future services that
defendants might be called upon to perform in checking
the status of the building operations on the property.
While it is conceivable that a charge of some kind might
be proper under certain circumstances, there is nothing

to show nor is it claimed that the $1,020 was exacted to cover this possible future service.

[6] However, as we have noted above, the judgment pronounced by the court in this case restrains and enjoins the defendants from selling said security for any default in payment of interest on said loan. And the court found said promissory note provided for monthly installments of $800 or more each, payable on the first day of each month, and that should default be made in the payment of any installment when due, the whole sum of principal and interest should become immediately due and payable at the option of the holder of the note; also that appellant mortgage company had paid the sum of $7,974 in partial discharge of principal and interest upon a prior mortgage lien existing upon the property involved herein; also that steps had been taken by the trustee to foreclose the deed of trust and expose the security to sale thereunder.

Notwithstanding these several facts the court, sitting as a court of equity at the instigation of plaintiffs, did not dispose of the issue tendered by the above-mentioned facts, but, as we have noted above, rendered only a partial decision in the matter. These several facts above noted, in our opinion, made it incumbent upon the court below, as such court of equity, to assume full and complete jurisdiction in the premises and make and state the account between the parties and make plenary disposition of all the issues involved in the action (25 Cal. Jur., sec. 53, pp. 69, 70). [7] While the provision for a special right of action in plaintiff for treble the amount of interest paid is in the nature of a penalty, the context of the act gives it more of the rating of an action for debt and therefore subject to offsets and counterclaims by defendants. Besides, were this not true, the plaintiffs waived the right to object to offsets and counterclaims by coming into a court of equity and praying for additional relief instead of the mere pronouncement of a judgment in forfeiture against the defendant mortgage company. Equity, having once acquired jurisdiction, as we have noted above, will administer the whole issue.

[8] We accord no merit to the contention of appellants, also of *amici curiae,* that plaintiffs must first do equity by

tendering the principal and such other items, excluding interest, as may be due under the obligation, before suit may be maintained for treble the interest paid. This contention is the general rule (27 R. C. L., p. 264, sec. 67, and cases cited), but this rule has no application to the special remedy allowed the borrower under this act when the action is commenced within one year after payment. (27 R. C. L., pp. 274, 275, sec. 77; *Second National Bank* v. *Fitzpatrick*, 111 Ky. 228 [62 L. R. A. 599, 63 S. W. 459].) This construction is plain from the language of the act itself.

[9] But we are yet met with another question in this case. The act further provides: "Any agreement or contract of any nature in conflict with the provisions of this section shall be null and void as to any agreement or stipulation therein contained to pay interest and no action at law to recover interest in any sum shall be maintained and the debt cannot be declared due until the full period of time it was contracted for has elapsed." Does this provision affect the maturity date of the promissory note before us? A careful consideration of the provision convinces us that the intent is that the maturity date of the obligation cannot be accelerated, if the option to declare the whole of the principal debt due is dependent solely upon nonpayment of usurious interest. In other words, if the note provides for installment payments on the principal as well as the payment of interest and gives the right to the holder to declare the whole debt due for nonpayment of either principal or interest, the forfeiture of the right as to interest could not destroy or affect the remaining right as to principal. From a consideration of the note involved in this action it will be seen that it is an installment note without a definite date of maturity. It specifically provides for payments of $800 or more monthly. How soon such an obligation would be finally matured and paid cannot be definitely foretold, unless interest be excluded and the payments are confined to $800 per month and all applied on the principal.

Respondent seems to contend that such date of maturity should be determined as though the situation were the creation of a sinking fund by these monthly payments which would gradually and finally amortize the principal debt

with interest and that the point of time at which such debt would be finally absorbed should be considered the maturity date of the whole of such obligation. In other words, respondents seem to declare that the court must forbid the collection of any principal or the declaring of any portion of the principal due until by a process similar to the one above described, the debt would be finally paid in full with interest, were such partial payments provided for made. We can see no reason for any such holding. One thing is true and that is that the note provides that each month a payment to some extent must be made on account of the principal as distinguished from the interest and that such payments on account of principal will increase from month to month. Is it true that, on account of the usury in connection with this item of interest, this obligation to pay part of the principal is also voided? Our answer is "No." A man guilty of usury does not forfeit his goods like a felon at common law. The usury law is to be used as a shield and not as a sword.

We have no hesitancy in holding that in an obligation such as we have before us the full payments called for in the promissory note must be paid in order to prevent default, as well as to prevent acceleration of the maturity date of the remainder of the principal; that, inasmuch as the claim for interest is void, all payments will be referred to the principal and the obligation thus finally extinguished. If default has been or is hereafter made in the payment in full of these installments, the whole of the obligation (without interest) may, at the option of the holder of the note, be declared due and payable. Any other construction would be tantamount to the infliction of a further penalty upon defendants not provided for in the act.

So, also, in this case if the principal obligation is found to be due and on this account, when taken in connection with other charges, it exceeds the amount of the interest paid when trebled, it would be the duty of the court, as above noted, to state the account between the parties and to credit the offset of the interest trebled and generally to dispose of the whole issue presented by the cause.

Judgment is reversed, with direction to the court below for such further proceedings herein as it may be advised not inconsistent with this opinion.

Shenk, J., Richards, J., Curtis, J., Seawell, J., Waste, C. J., and Langdon, J., concurred.

Rehearing denied, and on April 26, 1927, the court filed the following opinion:

THE COURT.—Petition for rehearing herein is denied.

The subject of usury presents countless legal questions, a great many of which could not possibly be considered germane to the questions involved in this appeal. Some five sets of *amici curiae*, however, have filed briefs and have suggested many questions which the profession desires answered. In so far as those questions are deemed pertinent to the issues of the case before us, we have yielded to their importunities and will undertake to discuss them.

[10] Respondents and also one set of *amici curiae* assert that in this case respondents should have had a sweeping provision in the judgment declaring not only forfeiture of the right to interest with penalties thereto, but also declaring forfeited and uncollectible the entire principal debt. There is not a semblance of merit in this contention.

In the first place, the amended complaint does not aver such a forfeiture, and in the second place the prayer is only to the effect that said sale under said trust deed be enjoined until the "full maturity of said loan" and "that each defendant be enjoined at all times, until the full period of time said loan was contracted for has elapsed, from selling or offering for sale, or exposing for sale, or taking any steps whatsoever to sell or to offer for sale the said premises or any part or portion thereof, or interest therein."

Moreover, even a casual reading of the statute itself shows that the legislative intent was not to declare the whole contract void, but only the portion thereof relating to interest. The language in this connection is as follows: "Any agreement or contract of any nature in conflict with the provisions of this section shall be null and void as to any agreement or stipulation therein contained to pay in-

terest and no action at law to recover interest in any sum shall be maintained and the debt cannot be declared due until the full period of time it was contracted for has elapsed.'' The contention that the principal debt is forfeited is wholly inconsistent with merely deferring the collection of the debt until the full period of time it was contracted for has elapsed. No authority has been cited and none can be found holding the principal debt forfeited under such provision of a statute. The authorities cited by counsel, in so far as applicable at all, are in direct opposition to this contention, for in *Jackson* v. *Shawl,* 29 Cal. 267, 272, the court said:

''The plaintiff's promise was to repay to the defendant the sum borrowed in one month, and also to pay him seven per cent per month on the principal sum for its use. Here the contract between the parties was legal as to the principal sum, but illegal as to the interest. The two things were not inseparable. 'When the transaction is of such a nature that the good part of the consideration can be separated from that which is bad, the Courts will make the distinction, for the common law doth divide according to common reason; and having made that void that is against law, lets the rest stand. The general and more liberal principle now is, that when any matter, void even by statute, be mixed up with good matter, which is entirely independent of it, the good part shall stand and the rest be held void.' (2 Kent's Com., 467, and cases cited; *DeGroot* v. *Van Duzer,* 20 Wend. (N. Y.) 421; *Leavitt* v. *Palmer,* 3 N. Y. 37 [51 Am. Dec. 333]; 1 Parsons Cont., 380.)''

In *Innes* v. *Goldwater,* 30 Cal. App. 101, 105 [157 Pac. 18, 19], the court again said: ''In the light of this express approval of the principle declared in the case of *Jackson* v. *Shawl,* we are constrained to give application to that principle in the case at bar to the extent of holding that the agreement of the plaintiff with the defendant for these several loans and pledges were legal in so far as the principal sum of such loans and security therefor were concerned, and only illegal as to the interest to be charged, and hence that the plaintiff was not entitled to recover the personal property so pledged and made the subject of this

action without first tendering and offering to repay to the defendant the amount of his original loans."

Of course, if it were impossible to ascertain how much of the sum contained in the note of $34,000 was principal and how much thereof was imputable to interest, there might well be made the contention that inasmuch as some of the transaction was void because prohibited by the statute, all should be so declared, but such is not the fact. The evidence shows without conflict that the item of $1,020 was a three per cent commission, and that the remainder of the sum, to wit, $32,980, was actually delivered to and received by the respondents as principal. The interest is, therefore, clearly severable from the principal. The fact that they are contained in the same instrument is no argument against such a construction and, as above noted, the statute declares only the obligation to pay interest void, but nowhere assails the integrity of the obligation to repay the principal.

[11] It may also be said in passing that the provisions, of the act declaring the taking of usury a misdemeanor relate only to the question of interest and bear no relation whatever to the loan or repayment of the principal sum. The fact that the commission of three per cent was construed to be interest made it incumbent upon the court to declare the contract usurious and to carry with it the penalties provided in the statute. Respondents' desires have been whetted and they now want not only what the complaint did not ask, but what the statute does not allow. They desire not only the amount denominated a commission construed as carrying with it the death penalty to the covenant to pay interest, but also the same penalty for the entire principal debt. Indeed, respondents in one stroke desire to receive $32,980 for which they gave nothing in return and in addition to make clear profit of twice the amount of interest paid on account of the transaction. The legislative power has not declared such a result and we must decline to write such a meaning into the statute.

[12] A second set of *amici curiae* contend that as long as the limit of the rate of interest is maintained at twelve per cent per annum, the compounding of the interest, if not paid at the time provided for, should be allowed. This

contention is in the teeth of the statute itself and cannot be maintained.

A third set of *amici curiae* contend that the holding of the court is ambiguous as to the meaning of the maximum rate of interest allowable under the statute. We intended to hold that the maximum rate allowed for loans coming under the act is at the rate of twelve per cent per annum for the full period of the loan, and that within such limit the parties may freely contract in respect thereto, if done in writing.

This means that interest may be compounded, if the maximum rate is not exceeded.

This means, also, that commissions and bonuses may be charged by the lender, but all such charges must, when added to the interest specified and spread over the whole period of forbearance, be kept within the limit set by law.

This means, also, as pointed out above, that at the maximum rate, compounding of the interest is illegal. It also means that at the maximum rate of interest the contract may not provide for interest upon any unpaid installment when due. Such an agreement may be made, but only after the date of maturity of such installment and upon a new consideration.

This means, also, that at the maximum rate no interest may be lawfully collected in advance. It means, also, that if, in other cases, interest is deducted in advance from the amount of the loan that in testing the transaction for usury the principal sum loaned will be held to be the amount of the loan less the interest or commission deducted in advance.

[13] But, notwithstanding all the above, we hold that no legal objection exists to provide in a loan contract that it shall bear the maximum rate of interest, payable at the end of any particular period, such as monthly, quarterly, semi-annually, or annually, during the full period of forbearance, provided, of course, as noted above, that such installments as fall due will be without accruing interest thereon, except upon a new contract and new consideration, but the right to declare the whole obligation due for the nonpayment of such installment or installments of interest when due must be held to exist.

200 Cal.—40

It should be stated here that on the conclusions above announced the authorities of the various states are in conflict. No state has a statute identical with our own; hence, we have had to rely upon practically an independent construction of the provisions of our statute itself.

[14] Complaint is made, also, of our holding that in the instant case respondents were not required to do equity by tendering the principal sum and such other items, excluding interest, as might be due under the obligation before suit could be maintained in this case. Counsel have overlooked the fact that here the extent of the prayer was to cover two subjects only, to wit: Forfeiture of interest and forfeiture of the right to declare the debt due until the full period of time contracted for had elapsed. As to relief on these grounds, it is not necessary to make any tender whatsoever. The law gives a prayer for such relief a special standing, which is not affected by the rule of equity urged upon us. What may or may not be required in that connection in a suit of a different type need not here be discussed.

Complaint is also made of our language as follows: " . . . that inasmuch as the claim for interest is void, all payments will be referred to the principal and the obligation thus finally extinguished." The contention is that when taken in connection with other parts of the opinion, this provides for quadruple interest. There is no merit in the claim. The meaning of the phrase is as though the word "future" or "subsequent" were inserted between the words "all" and "payment." This clearly appears from the context from which the quotation is taken.

Complaint is also made of the failure of the court to declare whether or not lawful interest might be collected upon the advances made by appellants to discharge prior liens on the mortgaged property. No reason exists for especially passing upon this proposition, as the court in stating the account will undoubtedly allow interest unless there are some special circumstances making such relief inappropriate. The same may be said of the contention that the court should declare whether the deed of trust should be foreclosed by the court or should be foreclosed under the procedure provided for in the deed itself. There ap-

pears to be no reason why we should anticipate a situation calling for a decision of this question.

Lastly, it is asserted that in holding the paragraph in section 3 of the act, respecting the exception of loans on corporate, municipal, and other public bonds, unconstitutional, and yet sustaining the other provisions of the act, we are doing violence to the previous holdings of the court, of which *Mordecai* v. *Board of Supervisors,* 183 Cal. 434 [192 .Pac. 40], is a conspicuous example. Exactly the opposite is true. We are indorsing the doctrine thereof expressed in the words " . . . and if those provisions are reasonably separable from the balance of the act, and the purpose of the act and the intention of the legislature will be subserved even with those provisions gone, the balance of the act will stand." We held that section 1 covered all loans, secured and unsecured, and the paragraph declared invalid would, but for the illegal exception thereto, have been merely a repetition of the meaning of or provision already contained in said section 1. This clause was declared invalid by reason of the exception.

If this whole clause passes from the statute as surplusage or extraneous matter, or as void because of an illegal exception, how can it be said that the meaning of section 1 is in anywise affected? By such action we have but clarified the situation and declared the legislative intent without in the slightest degree thwarting it. See in this connection, *Ex parte Schmolke,* 199 Cal. 42 [248 Pac. 244]. *Bacon Service Corp.* v. *Huss,* 199 Cal. 21 [248 Pac. 235], is not authority for the contention of counsel, but distinctly supports the view here announced.

Each particular statute under interpretation must furnish its own basis for decision upon a question of this character.