## BLACKMORE INV. CO. v. JOHNSON et al.

Circuit Court of Appeals, Ninth Circuit.
April 22, 1929.

Rehearing Denied May 27, 1929.

No. 5667.

434

Everett C. McKeage, of San Francisco, Cal., for appellant.

Bianchi & Hyman, of San Francisco, Cal., for appellees Johnson.

· Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts). [1] The appellant contends, first, that there is no evidence to show that it defaulted in the payment of interest on the promissory note for the monthly period ending April 26, 1927, but that, on the contrary, the evidence shows that tender of the interest was made on May 6, 1927, which was within the ten-day period of grace allowed by the terms of the note. Upon the evidence, the court below may well have found that the appellant never made a valid offer or tender of that installment of interest. There was evidence that in the afternoon of May 6, 1927, Marks, the attorney for the Johnsons, refused to receive the check which was tendered by the appellant, and stated that "Mr. Johnson had had enough trouble with the appellant with documents and checks marked with interest payments and I do not propose that he will take any further checks from the Blackmore Investment Company." The appellant, on the same day, again tendered the check which had been rejected, and demanded a receipt showing advance payment for the month following April 26, 1927, instead of for the month ending on that date. The check was again rejected by the appellees, and immediate, unconditional payment in cash was demanded. The appellant insists that it made a lawful tender in cash of the interest money due on April 27, and it relies upon the testimony of its secretary that in the afternoon of May 6 he obtained $653.35 in cash, and took it to the office of the appellees' attorney, and told the latter that he was there with the cash to pay the interest, but that the attorney replied, "We are going to discuss this thing before we go any further," and that he read some letters, and especially the letter of May 3 (which has been hereinabove referred to) and said to the witness, "Do you repeat that?" and inquired if the witness would rescind it, and, upon his refusal to rescind, the witness

was ordered out of the office. The testimony of the attorney for the appellees, however, was to the effect that in the discussion in his office the appellant's secretary at all times demanded a receipt for the interest as an interest payment in advance, and persisted in stating that the payment would be of interest in advance, that all prior interest payments had been made in advance, and that he never at any time on that day withdrew from that position. It is not denied that the appellant was in error in assuming that position. Clearly the appellees were not bound to receive a payment made on condition that the receipt therefor should falsely state that it was a payment of interest in advance. Nor does there appear to have been anything in the prior dealings between the parties to bind the appellees to receive on May 6 a check in payment of the interest then due, or to deprive them of the right to demand the payment of the interest in cash and to notify the appellant that they would accept no more payments of interest by check.

█ █ The appellant contends that the transaction in which the real estate was sold and the promissory note was given was usurious, and that therefore the appellees were powerless to collect any interest on the note or to demand payment of the principal until the expiration of two years from the date of the transaction, and it also contends that the appellant was entitled to recover from the appellees treble the total amount of the interest paid, which, it is alleged, was $52,840.-20 at the time of bringing the present suit. The usurious feature of the contract is said to be this: That there is included in the purported purchase price of $127,000 agreed to be paid a $12,000 bonus and a commission of $3,000, making in all the sum of $112,000, the amount for which the appellant gave its note, and that, as the note bore interest at 7 per cent. per annum, that interest, added to the $12,000 bonus, spread over the two-year term of the note, exceeds the lawful rate of 12 per cent. per annum, and this irrespective of the $3,000 commission, which, it is said, makes the contract even more unconscionable. The Usury Law of California, Deering's General Laws of California 1923, part 1, p. 1384, provides: "Any agreement or contract of any nature in conflict with the provisions of this section shall be null and void as to any agreement or stipulation therein contained to pay interest and no action at law to recover interest in any sum shall be maintained and the debt cannot be declared due until the full period of time it was contracted for has elapsed."

Section 2. There is nothing in the record before us to show that the transaction between the parties here involved a loan or forbearance of money so as to bring it within the provisions of the Usury Law. The authorities fully sustain the proposition that a sale of one's property for whatever price, no matter how unconscionable it may be, does not in itself constitute usury. In 39 Cyc. 926, it is said: "It is manifest that any person owning property may sell it at such price and on such terms as to time and mode of payment as he may see fit, and such a sale, if bona fide, cannot be usurious, however unconscionable it may be." "The first element of a usurious transaction is that there be a loan or forbearance of money, for if there is neither, there can be no usury, unless a statute has given some definition of usury inconsistent with that of the common law." 27 R. C. L. 213. "On principle and authority, the owner of property, \* \* \* may offer to sell at a designated price for cash or at a much higher price on credit, and a credit sale will not constitute usury however great the difference between the two prices, unless the buying and selling was a mere pretense." 27 R. C. L. 214. In Verbeck v. Clymer, 202 Cal. 557, 563, 261 P. 1017, 1019, it was said: "The owner of property, whether real or personal, has a perfect right to name the price on which he is willing to sell, and to refuse to accede to any other. He may offer to sell at a designated price for cash or at a much higher price on credit, and a credit sale will not constitute usury however great the difference between the two prices, unless the buying and selling was a mere pretense."

The appellant cites Haines v. Commercial Mortgage Co., 200 Cal. 609, 254 P. 956, 53 A. L. R. 725, on rehearing, 200 Cal. 609, 255 P. 805, 53 A. L. R. 725, and Rice v. Dunlap (Cal. Sup.) 270 P. 196, and says that the latter case especially is similar to the case at bar, except that it involved a purchase of personal property, while the case at bar involved a purchase of real property. To that we cannot agree. Both cases differ from the case at bar, in that the decision in each turned upon the incidents attending a loan of money with which to make the purchase. Upon the loan in the Haines Case interest was deducted in advance in such a sum that, added to the interest which the borrower promised to pay, it made a total rate of interest in excess of the legal rate. In Rice v. Dunlap the defendant borrowed 40 per cent. of the purchase price to pay for stock which he purchased. He signed two

notes for $8,040 each, and his agent sold them to the plaintiff. The plaintiff stipulated that the agent should give him one-half of his commissions, which was 7½ per cent. of the face value of the notes. In an action to recover on the notes, it was held that the plaintiff's retention of this portion of the commissions, in addition to the interest provided in the notes, was usurious. No such state of facts is found in the case at bar. Here no loan of money was made or applied for. It was a case purely of bargain and sale. The owners of the property stated their price, and the purchaser agreed to pay it, part in cash and the remainder secured by a note and mortgage.

The judgment is affirmed.