In the Matter of VEHM ENGINEER-ING CORPORATION, Bankrupt.

BARUCH INVESTMENT COMPANY, dba Advance Industrial Finance Company and Trans-West Factors, Petitioners-Cross-Respondents-Appellants,

v.

Curtis B. DANNING, Trustee, Respondent-Cross-Petitioner-Appellee.

BARUCH INVESTMENT COMPANY, dba Advance Industrial Finance Company and Trans-West Factors, Petitioners-Cross-Respondents-Appellees,

v.

Curtis B. DANNING, Trustee, Respondent-Cross-Petitioner-Appellant.

Nos. 74–1210, 74–1228.

United States Court of Appeals, Ninth Circuit.

Aug. 21, 1975.

Stuart L. Kadison (argued), Los Angeles, Cal., for Baruch.

Robert A. Greenfield (argued), Los Angeles, Cal., for Danning.

OPINION

Before CHAMBERS and CARTER, Circuit Judges, and FITZGERALD,* District Judge.

JAMES M. CARTER, Circuit Judge.

Petitioners Baruch Investment Company, dba Advance Industrial Finance Company ("AIF"), and Trans-West Factors ("TWF") appeal from the judgment of the district court, affirming in all respects the order of the Referee in Bankruptcy. That order awarded the trustee, after a number of offsetting procedures, the net amount of $913.66 against AIF. AIF contests the finding that it and TWF had engaged in usurious transactions with the bankrupt, Vehm Engineering Corporation ("Vehm"), and that the trustee could recover on behalf of Vehm despite a release of all claims "known or unknown" against AIF that was signed by Vehm's president. The trustee contests the Referee's set-off of TWF's claim against the trustee with respect to the trustee's claims against AIF. We affirm in part and reverse in part.

FACTS

Vehm was declared a bankrupt on November 20, 1970. Danning, the trustee in bankruptcy, sought the proceeds of an auction sale of Vehm's machinery, equipment, and inventory, and to recover usurious payments (and treble damages) against AIF and TWF in connection with two factoring loans made by them to Vehm.

Vehm had been engaged in the factoring business with AIF from at least 1962 until July 1969. The factoring fee charged by AIF was 2¼%. On July 2, 1969, this arrangement was terminated. The Referee found the 8-year arrangement to be in fact a loan secured by the accounts receivable of Vehm, and the "factoring fee" over that period of $222,862.90 was found to be interest in excess of 10% per annum and thus usurious.

---

* Honorable James M. Fitzgerald, United States District Judge, District of Alaska, sitting by designation.

On July 2, 1969, Vehm paid off the above "loan" from AIF in the amount of $241,093.62, and at the same time received a $250,000 loan from AIF on machinery, equipment, and inventory. The new loan called for 10% per annum interest, and was conditioned upon a ¼% increase in the factoring fee charged Vehm. The accounts receivable factoring by AIF was terminated, TWF took over the "factoring" of Vehm's accounts, and, at AIF's request, the additional ¼% "fee" was to be paid to TWF.

The Referee found that the effect of this transaction was that AIF was to receive 10% on the loan *plus* the extra ¼% payable as a "bonus" to TWF. The Referee thus found that the bonus paid to TWF at the insistence of AIF was really additional interest to AIF (above and beyond the 10%), since the companies were controlled and dominated by Jack Baruch, the president and major stockholder of both companies.

Also on July 2, 1969, and contemporaneous to the above transactions, the president of Vehm signed a release which provided in part:

> "For and in consideration of the above and other valuable consideration, we hereby release you from any and all claims of any kind, nature and description, known or unknown, from the beginning of the world to date, and further waive all rights under Section 1542 of the Civil Code of California."

He also certified that he had read and understood all of the release and § 1542 which was set out in full.

The Referee found, then, that: (1) the trustee was entitled to recover from AIF $222,862.90 usurious interest (1962–1969), and $48,939.48 ($16,313.16 trebled for usurious interest on the $250,000 loan). After the principal still owed AIF by Vehm is subtracted, the net recovery would be $56,802.38; (2) the trustee was entitled to recover from TWF $88,462.68 ($29,487.50 trebled for usurious interest from 1969 to date of bankruptcy). After the principal still owed TWF is subtract-

ed, the net recovery for TWF would be $55,888.72; (3) the Referee further held that the total owed TWF may offset the amount owed the trustee by AIF, for a net owed the trustee of $913.66.

## DISCUSSION

AIF and TWF contend that: I. The July 2 release was effective as to Vehm's unknown claim of usury against AIF. II. The $250,000 loan between AIF and Vehm was not usurious, but even if it was, the "financing bonus" received by TWF should not have been trebled and should not have been charged to AIF. The trustee contends that: III. TWF should not have been permitted to offset its net claim against Vehm (hence the trustee) against the trustee's recovery from AIF.

### I.

The Referee found that the July 2, 1969 release, *supra,* was not effective as to the then unknown, contemporaneously arising usury claim, despite the language in the release pertaining to all claims "known or unknown." The trustee argues that this finding is supported by public policy, by Cal.Civ.Code § 1542, and by the general rule that:

> "A release ordinarily operates on the matters expressed therein which are already in existence at the time of the giving of the release. Accordingly, demands originating at the time a release is given or subsequently, and demands subsequently maturing or accruing, are not as a rule discharged by the release unless expressly embraced therein or falling within the fair import of the terms employed." 76 C.J.S. *Release* § 53, p. 699 (footnote omitted).

Since we agree that the release did not cover the usury claim because the cause of action accrued contemporaneously, we need not decide whether the other grounds alleged would also support the Referee's finding.

In California, when a debtor pays the interest on a usurious loan the pay-

ment is deemed to be a payment of the outstanding principal. Therefore, the debtor's cause of action to recover usurious interest does not accrue until he has made a payment in excess of the principal amount of the debt. *Westman v. Dye,* 214 Cal. 28, 38–39, 4 P.2d 134 (1931). This rule is not limited, as AIF contends, to instances where the debtor seeks to set off his interest payments presently barred by the statute of limitations against the lender's recovery on the principal amount. *See Ames v. Occidental Life Ins. Co.,* 210 Cal. 271, 274, 291 P. 182 (1930); *Haines v. Commercial Mortgage Co.,* 200 Cal. 609, 621, 254 P. 956, 255 P. 805 (1927).

■ In the present case, Vehm's cause of action for usurious payments from 1962 to 1969 did not accrue until those payments exceeded the amount of the principal. This did not occur until July 2, 1969, when Vehm paid off the balance of its AIF factoring loan in the amount of $241,093.62. This was contemporaneous with the execution of the release. Therefore, unless this usury claim was specifically intended by the parties to be covered by the release, it was not discharged. *See Rensink v. Wallenfang,* 8 Wis.2d 206, 99 N.W.2d 196, 199–200 (Wis. 1959). *See generally Sime v. Malouf,* 95 Cal.App.2d 82, 109, 212 P.2d 946, 213 P.2d 788 (1949) (a release will be construed most strongly against the party who prepared it).

■ The Referee found that it was a form release prepared by AIF, was not read by Vehm's president because he was told that it was merely "standard accounting procedure" when accounts are transferred to another factor, that no usury claim was considered or even known by Vehm at the time the release was signed, and that "[t]he facts and circumstances surrounding the giving of the release bear the earmarks of a subterfuge to defeat the usury law." These findings find substantial support in the record. At the least, then, it is unclear whether the contemporaneously arising but unknown usury claim was intended to be covered by the release. Hence, we construe the release against AIF and

hold that it was not effective to discharge Vehm's claim of usury.

AIF's reliance on *Larsen v. Johannes,* 7 Cal.App.3d 491, 86 Cal.Rptr. 744 (1970), that with respect to commercial transactions between knowledgeable businessmen, parol evidence is incompetent to vary the express intent of a written release, is misplaced. First we have held *supra* that the "express intent" of the July 2 release was not clear. Furthermore, assuming that *Larsen* represents the applicable rule in a commercial context, *cf. Casey v. Proctor,* 59 Cal.2d 97, 28 Cal.Rptr. 307, 378 P.2d 579 (1963), it is distinguishable from the present case. *Larsen* involved businessmen in equal bargaining positions, whereas here the Referee found that AIF had Vehm in a disadvantageous position, and unfairly made the signing of the release a precondition to the $250,000 loan.

Also, in *Larsen* the entire business relationship between the parties was terminated; both parties released each other from all possible claims as a part of that final termination. Thus, the rule could be applied that "[e]ven though there had been usury in the original transaction, it would seem that upon a settlement upon which each of the parties released the others from all claims and liabilities of every character then existing, the right to rely on a previous usurious transaction would cease to exist." *Credit Finance Corp. v. Mox,* 125 Cal.App. 583, 586, 13 P.2d 937, 938 (1932). In the present case, however, the business relationship was not terminated, AIF paid no consideration for its release, and Vehm was released from nothing of value.

## II.

■ AIF's contention that the $250,000 loan between it and Vehm was not usurious is also without merit. The Referee found that "[t]he additional one-quarter of one percent (¼ of 1%) paid by Vehm to TWF was a 'financing bonus' extracted by AIF from Vehm, and as a result, the interest paid by Vehm on the $250,000 loan exceeded ten percent (10%) per annum." This finding is supported

by the record and is sufficient to attribute the "financing bonus" as part of the interest on the loan. *See Heald v. Friis-Hansen,* 52 Cal.2d 834, 837, 345 P.2d 457 (1959); *Bayne v. Jolly,* 227 Cal. App.2d 630, 632, 38 Cal.Rptr. 873 (1964). Since AIF and TWF were under the common control of Jack Baruch, the payments to TWF could properly be treated as additional interest to AIF. *See Conner Air Lines, Inc. v. Aviation Credit Corp.,* 280 F.2d 895, 899 (5 Cir. 1960), *cert denied,* 364 U.S. 911, 81 S.Ct. 274, 5 L.Ed.2d 225 (1960).

*Liebelt v. Carney,* 213 Cal. 250, 2 P.2d 144 (1931), cited by AIF to support its argument that it could not be found to have benefitted from payment to TWF unless it was TWF's agent or alter ego, is inapposite. In *Liebelt,* the lender *assigned* the usurious contract immediately after its execution and received no payments from the borrower. The court therefore held that trebled payments could only be recovered from the assignee who had actually "taken or received" the interest within the meaning of Cal. Civ.Code § 1916–3.[1] "There was no showing of collusion or relation of any other kind between [the lender] and either of the assignees." 213 Cal. at 253, 2 P.2d at 145. As noted above, however, in the instant case payment of the bonus to TWF was equivalent to payment to the closely related AIF.

■ However, the Referee improperly trebled the usurious interest paid to AIF on the $250,000 loan ($16,313.16) and the usurious interest paid to TWF from 1969

to the date of bankruptcy under the new factoring agreement ($29,487.56). Under *Westman, Ames,* and *Haines, supra,* payments under a usurious loan agreement, although denominated as interest, will be deemed to be payment on the principal. *See, e. g., Ames, supra,* 210 Cal. at 274, 291 P. 182. Until such payments exceed the principal, they should be deducted from the principal owed, not trebled as usurious interest. *See Westman, supra,* 214 Cal. at 39, 4 P.2d 134. Therefore, each of the above amounts should be deducted from the principal and should not have been trebled.

### III.

■ The Referee permitted TWF to offset its net claim against the trustee's recovery from AIF. The trustee contends that this was erroneous, since debts owing to and from the bankrupt's estate must be "mutual." Bankruptcy Act § 68a, 11 U.S.C. § 108(a).[2] Although this contention would appear to be inconsistent with the finding that AIF "benefitted" from the payment of usurious interest to TWF because of their common control, the tests are not the same. Under § 68a, only claims to and from the same creditor and in the *same capacity* may be set off, 4 Collier on Bankruptcy ¶ 68.04, at pp. 867–875, whereas the corporate "veil" may be "pierced" for purposes of the usury statute.

■ In the case at bar, the debts sought to be offset—TWF's claim against the estate and the trustee's recovery against AIF—are not debts or

1. Cal.Civ.Code §§ 1916–2 and 1916–3 provide in pertinent part:

"No person, company, association or corporation shall directly or indirectly take or receive . . . any greater sum or any greater value for the loan or forbearance of money [than at the rate of 10% per annum]. Any agreement or contract of any nature in conflict with the provisions of this section shall be null and void . . . .

"Every person, company, association or corporation, who . . . shall have paid or delivered any greater sum or value than is allowed to be received under the preceding sections . . . may . . . recover in

an action at law against the person, company, association or corporation who shall have received the same . . . treble the amount of the money so paid . . . ."

2. Section 68a of the Bankruptcy Act, 11 U.S.C. § 108(a), provides:

"In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

credits due to and from the same party. The Referee specifically found that although AIF and TWF were controlled and dominated by the same person, the two corporations "were at all relevant times separate legal entities." Hence, the debts are not "mutual" and may not be offset against each other. *See In re Berger Steel Co.,* 327 F.2d 401 (7 Cir. 964) (debt owed to a parent company by the debtor and debt owed by the parent's wholly-owned subsidiary to the debtor were not "mutual" under § 68a and could not be offset where the parent and subsidiary were separate corporate entities).

We therefore affirm the finding that the $250,000 loan from AIF was usurious, along with the payments made to TWF, and that the release was not effective as to the contemporaneously arising usury claim. However, we reverse the treble recovery of the interest payments (they should be attributed to principal) and the offsetting of TWF's net claim against the trustee's recovery from AIF (they are not "mutual"). We remand for recomputation of the net amounts owed.