[Civ. No. 4533. Third Appellate District.—January 29, 1932.]

CHARLES H. WOOD et al., Respondents, v. ANGELES MESA LAND COMPANY (a Corporation) et al., Appellants.

William J. O'Brien, Meserve, Mumper, Hughes & Robertson and Timon E. Owens for Appellants.

Bradner W. Lee, Jr., and Kenyon F. Lee for Respondents.

PARKER, J., *pro tem.*—The action was brought by plaintiffs to obtain relief under the Usury Act. The real controversy is between plaintiffs and the Angeles Mesa Land Company. The bank is a party for the reason that in a certain trust deed executed by plaintiffs' the bank was a trustee. Therefore, when we refer to defendant or appellant we mean the Angeles Mesa Land Company, which by abbreviation we will call the Land Company.

In the court below appellant contended, from the outset on through every step of the trial, that the complaint of plaintiffs stated no cause of action. The same contention is urged here and with equal insistence. We will first consider this phase of the appeal. Merely to indicate the record, the complaint under review is the second amended complaint. All reference to the complaint, unless indicated to the contrary, will be taken to mean this second amended complaint.

The complaint alleges that on or about April 28, 1924, plaintiffs and defendant Land Company made and entered into an agreement in writing under the terms of which the Land Company advanced money to plaintiffs on account of the purchase of certain described real estate. The contract is pleaded both by statement of its terms and as an exhibit attached to the complaint. The complaint then alleges that the Land Company under the terms of said contract purchased the real estate and loaned to plaintiffs the money with which to pay for the same and for improvements thereon; that the Land Company, in accordance with the terms of the contract and for the purposes therein provided, loaned to plaintiffs the sum of $40,701.99; that as a bonus for making said loan the Land Company demanded, took and received in money from plaintiffs and plaintiffs paid to said defendant a greater sum than at the rate of $12 upon $100 for one year, to wit, the sum of $10,000 cash; that the contract and the loans and the notes, evidencing the same, when

made, were and are in violation of the Usury Law of the state of California and were and are unlawful; that the making of the same was, and is, prohibited by the Usury Law (Stats. 1919, p. lxxxiii), and that said notes, therefore, bear no interest. The complaint pleads the execution of a certain note and a mortgage and deed of trust to secure the payment thereof. The prayer is that the contract and note given thereunder be declared usurious; that the loans bear no interest prior to due date and for a recovery of treble the amount of interest paid within one year prior to commencement of action, as well as application of interest as against the debt and such further relief as may be meet.

The main ground of appellant's attack upon the complaint is that by pleading the contract the plaintiffs are bound by the terms thereof as the same appear therein. In other words, that if the contract on its face does not show usury, then no characterization by plaintiffs could change a lawful and permissible transaction into one forbidden by the law.

A ruling which would uphold the contention would almost wipe out the Usury Act, and would be in direct conflict with all prior decisions in this state. It is now well settled that in determining whether or not the transaction is usurious the court will disregard its form and look to the substance and will condemn it if all of the requisites of usury are found to be present, despite any disguise it may wear. (*Haines* v. *Commercial Mtg. Co.*, 200 Cal. 609 [53 A. L. R. 725, 254 Pac. 956, 255 Pac. 805]; *Rosemead* v. *Shipley Co.*, 207 Cal. 414 [278 Pac. 1038].) And also the rule is now well established that it is a question of fact whether or not an usurious purpose lurks behind what purports to be a sale of property or a note legal on its face but given for a larger sum than was actually advanced upon it. (39 Cyc. 922, 1057, 1058.) Accordingly, one may plead a contract, quite innocent on its face, and by appropriate allegations disclose the true nature thereof without regard to the terms of the instrument.

In the present complaint, if we concede the legality of the written contract, nevertheless the allegations attempting to disclose the exact truth of the relationship of the parties and the purpose of the contract suffice to tender an issue.

We will now detail the contract here involved. The execution of the contract is not denied and it forms the main subject of controversy.

The agreement between the parties was dated April 28, 1924. It contains preliminary recitals to the effect that under date of March 3, 1924, the parties had entered into an agreement under which Wood had paid the Land Company $2,500 and that such prior agreement was canceled and the sum already paid to apply on the present agreement. The agreement then recited that on March 10, 1924, Wood requested the Land Company to buy for him other real estate for the sum of $20,000, plus title charges, and to use the sum of $2,500 as part payment thereon and that it is the intention of Wood to construct on said real estate a suitable building upon plans and specifications to be prepared by him, subject only to the reasonable approval of the Land Company; further reciting that in the construction of said building or preliminary thereto it will be necessary to remove a building then on the property.

The instrument then recites that the Land Company has agreed to provide money in an amount not to exceed $40,000 to apply upon the purchase price of said property and in connection with the removal of the old and construction of the new building upon the terms and conditions thereafter in the instrument expressed. The conditions then follow. Wood is to pay the Land Company $10,000 in payments extending over a ninety-day period, the last payment to be accelerated with delivery to Wood of title to property, if before expiration of the ninety-day period. Land Company agrees that it will apply these moneys upon the purchase price of land and upon the cost of the improvements and in addition thereto will advance money up to $40,-000 in such sums and at such times as may be necessary to pay for the property described and the expense of removal of present house and construction of the improvements contemplated; the new building to be erected upon plans and specifications furnished by Wood as his expense and cost, subject to approval of the Land Company.

It is expressly provided that all payments for material and labor and other costs entering into the removal and construction shall be upon bills showing the actual use of the

material and labor, all of said bills to be presented to the Land Company and retained by it in its files so long as it may be necessary for its protection.

It .was understood that the Land Company is to immediately take title to said real property in its own name and is to hold title thereto until the improvements contemplated by the agreement have been completed and paid for and if the total cost exceeds $50,000 then Wood is to *advance* one-fifth of all such further sums up to $10,000; and in this connection Wood agrees that if the building exceeds $60,-000 he will pay for all material and labor so in excess as and when such material is furnished, to the end that no liens shall be filed.

Within ten days from the time when improvements are completed Wood agrees to file a notice of completion and when the lien period has elapsed the Land Company agrees that it will transfer to Wood by sufficient deed the real property, provided Wood shall execute and deliver to the Land Company a note and mortgage in the principal sum to be fixed, payable five years after date, with interest at seven per cent per annum, payable quarterly (out of the monthly payments on the trust deed as hereinafter provided), and a note secured by a trust deed for such principal sum as may be necessary to make up the total sum then due to the Land Company, payable in monthly installments of one per cent of the total cost to Wood as said total cost is hereinafter defined, to include interest on the whole unpaid balance secured by mortgage and trust deed at the rate of seven per cent per annum. It is agreed that the total sum which shall be due to the Land Company and to be secured by said mortgage and trust deed shall be made up as follows:

1. The total of all sums which shall have been advanced for purchase, removal and construction and the additional sum of $1,000 paid agents of Wood.

2. Interest at seven per cent per annum on such advancements from date of the same up to date of mortgage and trust deed.

3. An additional sum of twenty per cent on the following items:

(a) The total price paid for the property together with the necessary costs and charges paid in connection with its purchase.

(b) The sum of $1,000 paid to Wood's agents.

(c) The total cost of removal of old building and replacing same, with such improvements and repairs thereon as Wood may consider necessary.

(d) The total cost of the new building and improvements to be constructed or placed on said property, which said additional sum of twenty per cent is the agreed profit which the Land Company is to make for its services in connection with the transaction.

For the purpose of fixing the installments of the note to be secured by said trust deed, it is agreed that the total cost of the property shall be the total of the four items, (a), (b), (c), (d), plus the profit of twenty per cent upon each and every of said four items and plus accrued interest provided for in paragraph 2.

Wood agrees that he will perform and pay at the times specified in the instruments. Wood agrees that if he makes any contracts for the construction of the buildings he will before entering into same deliver a copy of the same to the Land Company. Time is made the essence and in the event that Wood shall default after sixty days' notice he shall forfeit his interest in the said real property and all of his rights to the money theretofore paid by him to the Land Company and the latter shall be under no obligation in law or equity to convey said property to him, and the said Land Company shall retain said property together with all payments theretofore made, as liquidated damages. It is further agreed that at the maturity of the first mortgage the total sum then secured by mortgage and trust deed shall be redistributed into a new mortgage of not less than three years, and a new trust deed, the mortgage to be a first lien upon the property and for such principal sum as Land Company may name, the remainder due to be represented by trust deed and note payable in the same manner as under the original trust deed. This was the agreement incorporated into the complaint.

The allegation of the complaint that the transaction was a loan finds some support in the instrument itself. But regardless of this, the allegations of the complaint cannot be taken as merely characteristic, but do constitute in themselves statements of the fact. The contention that no cause of action results therefrom is without merit.

Other objections to the sufficiency of the complaint will not be here separately discussed, but a complete disposition thereof will follow from the discussion hereinafter.

The trial court found the transaction to have been a loan and that the rate of interest charged was usurious; that there had been paid as interest to April 20, 1926, the sum of $5,895.52; that there had been paid as interest for the year preceding the commencement of the action the sum of $3,065.73, which sum trebled equaled $9,197.19; that interest paid from April 20, 1927, to February 10, 1929, was $4,994.98. The total of these amounts is $20,087.69 for which amount plaintiffs recovered judgment, the said judgment further providing that no part of the principal of the note secured by trust deed shall be demanded or become due until October 25, 1929.

Appellant does not point out in its brief wherein the evidence was insufficient to support the findings, although appellant at intervals throughout seems to so contend. We have carefully considered the entire record in this connection and find ample evidence to sustain the court's findings. It appears that from the outset the entire negotiations involved but a loan of money and were so treated by all parties. There is likewise testimony to the effect that the writing was intended as a means to avoid the penalty of the Usury Act. This would seem to be decisive of the entire case, save the fact of the payments so found. Appellant, however, declines to rest there. It continues to argue that the terms of the instrument negative any idea of a loan or forbearance. In other words, the contention seems to be that notwithstanding the facts of the transaction, the agreement has been so worded and apparently worked out, that the provisions of the law may be set at naught. This, of course, is too narrow a view. As was said in the Haines case, *supra,* the court will carefully scrutinize the whole transaction and declare its substance, regardless of the form. Nor do we concede that the instrument itself is without taint.

 Throughout, it refers to advancements and its general tenor seems to be one of borrowing and lending. It is manifest that the Land Company owned no property to sell; it specifically undertook no construction, save under the guidance and direction of Wood. Wood had the right and

power to contract and to supervise the construction and the Land Company was to make payments for labor and material as ordered by and approved by Wood. And we note the significant phraseology "all bills to be presented to Land Company and to be retained by it in its files so long as may be necessary *for its protection*". In a *bona fide* purchase and sale transaction, such language would have been unnecessary. Even without testimony, and taking up the agreement by its own corners it would not be difficult to conclude that the situation was a simple one where Wood wanted money to procure a lot and erect a house and the Land Company had the money to loan for that purpose. Wood had the ambition and the Land Company had the money. The main purpose of the deal, as the contract itself unfolds it, was that Wood could pick his location and build to suit his needs and the company would advance the money. To argue that the transaction was merely one of purchase and sale belies the writing. The contract, coupled with the evidence, confirms the relationship, in its entirety, to be purely that of borrower and lender with an illy-devised plan of evading the penalties of usury.

Appellant next argues that the findings do not support the judgment. In this connection we are presented with two detached findings of fact which, by some favored interpretation, might be construed to hold the transaction, pursuant to the contract, one of purchase and sale. But it is likewise true that the findings, considered in their entirety, determine the advancements wholly by way of loan and that the additional moneys denominated as profit really by way of bonus. The findings amply support the judgment.

The next contention of appellants is that there was a failure to find on material issues. This goes back again to the details of the contract itself and without exhaustively detailing the argument or the claimed materiality of the omitted findings, we find that the findings as urged, even if made in favor of appellant, would not change the conclusion. And, further, the court did expressly find the pleaded contract to have been executed. Most, if not all of the issues upon which appellant claims there were no findings, embraced clauses of the contract; so, therefore, a finding on the execution of the contract was necessarily a finding as to its contents, under the record.

■ Appellant proceeds then to set up the argument that where a loan is made for an indefinite period, the contract is not usurious. The argument is predicated upon the terms of the contract which provide that at the maturity of the first mortgage the total sum then due should be redistributed into a new mortgage of *not less than three years*. Appellant argues that this leaves the term of the loan indefinite and that if the new mortgage were extended for a period sufficiently long the interest spread would be well under the rate prohibited. It will be noted that the only obligation imposed by the contract and the only right conferred was to have the new mortgage not less than three years. This gave to plaintiffs no right to demand more time, but left that phase entirely within the discretion of the lender. The loan was to be for a definite period of three years, unless the parties agreed otherwise. If the contract had read three years its effect would be identical because in the latter case the parties could, if they chose, thereafter agree to make it six or ten years. ■ It is contended that where a contract is subject to two constructions, one making it lawful, the other making it unlawful, the court will so construe it as to make the contract lawful if possible. (Sec. 1643, Civ. Code.) This is a recognized rule of construction and interpretation and not a rule of evidence. It is not the theory of the rule that where a trial court has taken evidence concerning the nature of a transaction it must resolve a conflict of evidence in favor of fair dealing. For instance, there is said to be no higher presumption of law than that of innocence. This does not mean that where a defendant denies his guilt as against positive evidence thereof he must be acquitted. Conceding the rule as stated, we find no place here for its application.

■ Continuing appellant's argument, we meet the contention that there is a heavy duty on one asserting usury to establish it. In the abstract, the rule supports the claim. The finding of the trial court, supported by competent testimony, meets the requirements. To say that the proof must be clear, unequivocal and convincing seems merely a commonplace use of words. Primarily the quality of evidence is a matter for the trial court, and where, as here, the trial court believed the evidence offered by plaintiffs to the effect that the entire matter was approached from the standpoint

of a loan and that when the discussion reached the usury feature it was represented that the way the proposition would be worked was through the form of a sales proposition and that the scheme had the assistance of a clever attorney who would work out the details; also that efforts were made to guarantee the loan. This and other corroborative evidence along the same lines would suffice and would even meet the requirements as to clarity and convincing force.

The point is raised that the element of intent is essential to usury. This, too, in the abstract, is correct. Yet the question of intent is open to debate. If the character of a transaction were in doubt much aid would be had in determining its true nature by discovering the intent behind the scheme. But where the character, scope and general purpose and design is found, intent becomes more or less immaterial. The old truism holds that one is presumed to intend to do that which in fact he actually does. If one lends money to another at an usurious rate, on a straight out-and-out loan, the fact that he had no manifest intent to violate the law would be of no consequence. Summing up, intent is material in determining the nature of a transaction; but the true nature being shown or admitted, the intent with which the act was performed is beside the inquiry.

Assuming the transaction before us, as we do, to be a loan, the further point is made that where commissions, bonus and other charges spread over the whole period of the loan or forbearance are within the limit set by law, there is no usury. Appellant points out nothing that would indicate the computation of the trial court to have been erroneous from this theory. The entire argument on this point deals with the commission paid to an agent by the Land Company. This was not one of the items included in the contract, nor in either the mortgage or trust deed. Just how appellant might have divided the proceeds of the unlawful interest does not become important. The finding, unassailed, is that this payment was not charged to plaintiffs nor brought to their knowledge or notice. It is apparent that if this item had been included then the twenty per cent added thereto would have had the effect noted in the other items. Under the authorities which recognize that there will be, in practically every loan, some expense, it must be held that these expenses should be incidental to the

loan and in some measure a part of the transaction. It would be carrying the rule too far to hold that one could justify an usurious loan by a simple showing that he had, aside from the negotiations, expended sums as private commissions in consummating the deal. These charges, to affect the rate, must affect the principal. If it could be shown that a part of the interest collected or charged, under the agreement, or by consent or arrangement of the parties, was really not interest nor charge for forbearance such a showing would be legitimate defense to the charge of usury. But no such showing is here made nor attempted.

Errors are alleged in the admission and rejection of testimony. No authority is offered in support of these assignments. The appellant merely recites the evidence, by reference to the bill of exceptions and concludes with the statement, "It seems that the court erred." However, the general argument is advanced that in cases of this sort every circumstance surrounding or connected with the transaction is material, if in any manner it will reveal the intention of the parties.

The appellant produced the president and secretary of the Land Company, being the officers of the company who executed the original contract. It was in evidence that all negotiations between Wood and the company were conducted on the company's behalf by one Hagans. Appellant offered to prove by the officers that neither of them had any contract with Wood; that the transaction, as Hagans advised them, was one of purchase and sale and that they and each of them, at the time of execution of the contract, so believed it; further that counsel had been taken on the matter and they and each of them believed that the legal effect of the instrument was a purchase and sale; that the entire subject was discussed, in this light, before the board of directors of the Land Company prior to execution of the contract. Without detailing further the offer of proof, the evidence offered was on the question of knowledge and intent on the part of the officers. The offer was rejected. There seems much merit in appellant's contentions, particularly as argued. But we reaffirm the conclusion, hereinbefore expressed, namely, that where the instrument on its face shows an usurious transaction, evidence of intent becomes immaterial.

That brings us back to the contract. The trial court had before it evidence concerning the negotiation leading up to the execution of the contract. The court found the transaction to be a loan. Nothing in the record reflects the basis of the court's finding. That is to say, we cannot glean from the record whether the court held the instrument to be but a device to hide the real transaction or whether the court, without the additional evidence of circumstances surrounding characterized the instrument, from its own terms, as but an evasion. If the record before us sustains the finding on either ground it would be upheld. If, however, the only basis for the finding would be on the facts and circumstances surrounding the transaction, we are of the opinion that the court erred in rejecting the offer. On the other hand, if the terms of the instrument itself disclosed the transaction to be a loan then the evidence offered would be wholly immaterial. Appellant maintains that the instrument discloses nothing more than a contract of purchase and sale, and further contends that if a fair reading thereof would disclose a solution that would permit of the instrument being construed either as a purchase and sale contract or as a loan, then the policy of the law requires the former interpretation. Meeting the question squarely we hold that the contract, on its face, discloses nothing more than a loan, when read in the light of the admitted facts surrounding the execution thereof, without reference to those circumstances hereinbefore noted.

Reading carefully every word of the contract, we fail to note wherein the Land Company obligated itself to do anything but advance money. The earliest recital in the contract is: "Whereas Wood requested the Land Company to *buy for him* certain property." The next recital is: "Whereas it is the intention of Wood to construct upon said property a building suitable to his needs, upon plans and specifications to be prepared by him, subject only to the reasonable approval of the Land Company." The next recital is: "Whereas the party of the first part has agreed *to provide money* to apply upon the purchase price of said property." After these preliminary recitals the terms of the deal are specified. Throughout these terms we find no duties imposed upon the Land Company other than to furnish money. The construction of the building is left

to the control and direction of Wood. The provision is that after the improvements have been completed *Wood* shall file notice of completion and when the lien period has expired then the real property shall be deeded.

We can find no language supporting the idea of purchase and sale. It seems too plain for further discussion that the transaction was, on its face, an agreement for the use of money and nothing more. Much is said throughout the entire appeal concerning the justice of the case. It is maintained that the case shows the limits to which the law might be used to really stifle fair dealing, rather than promote it. The claim is urged that the theory of usury laws is to prevent advantage being gained over the needy and oppressed; that the law is purely humanitarian legislation. All of this does not alter the case as presented. Money, its use and value are questions of grave economic concern, upon a proper solution of which much may depend. One effort at the solution is usury legislation and we are not inclined to restrict its effect by assuming arbitrary limitations in its purpose.

If we were to conclude that an injustice would result in an exorbitant rate of interest on a loan to a needy person and no injustice in the same rate to one desiring the money for pleasure or speculation the inevitable effect would be to close the market of restricted loans, to increase hazardous speculation and to invite a train of economic ills beyond imagination. Universally, laws regulating interest and forbearance charges have been found beneficial and necessary and the almost unanimous reaction of the courts has been that the spirit of such laws will not be destroyed through the encouragement or upholding of makeshift devices designed to evade the law's requirements or restrictions.

The judgment is affirmed.

Preston, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 27, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 28, 1932.