[Civ. No. 11821. First Dist., Div. One. May 28, 1942.]

FRANK PAILLET, Respondent, v. MARTIN A. VROMAN, Appellant.

Russell P. Tyler and Herbert Pothier for Appellant.

P. A. Bergerot and A. P. Dessouslavy for Respondent.

WARD, J.—This is a suit for the collection of a deficiency judgment. The complaint was filed on November 28, 1927; an answer and cross-complaint on January 20, 1928; an amended answer and cross-complaint on the 24th of February, 1928, and an answer to the cross-complaint on May 5, 1928. On June 22, 1932, a stipulation was entered into between the parties extending the time within which the action might be brought to trial "to a date subsequent to February 24, 1933," the stipulation further reciting that it was intended as a waiver of section 583 of the Code of Civil Procedure and of "the right, if any, to move at any time to have this action dismissed for want of prosecution." On January 29, 1935, the parties further stipulated "that said defendant may withdraw said jury fees without waiving his right of trial by jury, and that when said action is set for trial at some subsequent date that he will then have a right to invoke the rules of the above entitled court applicable to the payment of jury fees." A motion by defendant to dismiss the action, based upon the provisions of section 583 of the Code of Civil Procedure was denied on August 14, 1939, and, following trial, judgment for plaintiff was entered on or about February 28, 1941.

The deficiency judgment arose in connection with a note, secured by a deed of trust, purportedly given plaintiff by defendant and appellant. The negotiations in the matter of the loan were carried on by a real estate broker named

Shadburne through whom plaintiff was in the habit of making loans on real property. When necessary, Shadburne arranged for renewals, procuring any additional cash necessary therefor from plaintiff. He was also entrusted with the preparation of the papers in connection with the loans and passed upon their legal sufficiency. The note out of which this action arose, signed by defendant, also a client of Shadburne, was dated December 22, 1923. It was in the sum of $16,500 and bore interest at the rate of 1 per cent per month, payable in advance. No interest was paid on the note after January 18, 1927. On October 13, 1927, following proceedings in the matter, the trustee sold the property secured by the deed of trust to plaintiff for $4,000. After deducting expenses of sale and counsel fees, the balance ($3,747.25) was applied to the payment of interest from January 18, 1927, to the date of sale, the remainder, $2,289.75, being credited against the principal, leaving unpaid $14,210.25 for which amount, but without interest, plaintiff recovered judgment.

Appellant contends that the action should have been dismissed because not brought to trial within five years of the date of filing the answer; that a motion for judgment on the pleadings should have been granted; that the transaction involved the procuring of a note by fraud on the part of plaintiff's agent; that the note was without consideration; that it and the accompanying deed of trust were affected with usury, and that he is not estopped to plead the usury statute.

At the time the action was brought, section 583 of the Code of Civil Procedure required actions to be brought to trial within five years after answer filed, unless by written stipulation of the parties the time was extended. Incidentally, while the above stipulations are not a part of the record herein, they have been referred to in the briefs of both appellant and respondent.

It is appellant's contention that since no extension was obtained on motion, the stipulation did not have the effect of extending the statutory period. The first stipulation is an indefinite waiver of the provisions of section 583. (*Bank of America* v. *Superior Court*, 22 Cal. App. (2d) 450 [71 P. (2d) 296]; *Miller & Lux Inc.* v. *Superior Court*, 192 Cal. 333 [219 Pac. 1006]; *Bayle-LaCoste & Co.* v. *Superior Court*, 46 Cal. App. (2d) 636 [116 P. (2d) 458].)

Appellant further contends that an agreement of waiver for an indefinite period is not valid. Unless a waiver for an

indefinite time for bringing an action to trial is against public policy, his position is not well taken, but in this respect the statute (§ 583 Code Civ. Proc.) is a declaration of public policy unless it be repugnant to a constitutional provision. (*Carr* v. *Kingsbury*, 111 Cal. App. 165 [295 Pac. 586]; *Winklemen* v. *Sides*, 31 Cal. App. (2d) 387 [88 P. (2d) 147]; *Lux* v. *Haggin*, 69 Cal. 255 [4 Pac. 919, 10 Pac. 674]; *S. L. Jones & Co.* v. *Davis*, 65 Cal. App. 164 [223 Pac. 560].) Our attention has not been called to any constitutional provision that curtails the right of interested litigants by stipulation in writing to postpone the trial of an action. A waiver may be continuous. (*Brownrigg* v. *DeFrees*, 196 Cal. 534 [238 Pac. 714]; *Dexter* v. *Pierson*, 214 Cal. 247 [4 P. (2d) 932].) The above reference to statements and admissions in the appellant's briefs is simply to indicate that the point is without merit, but a sufficient answer to appellant's contention is that the record on appeal is not complete, and it must be assumed that the facts presented on the hearing of the motion to dismiss supported the trial court's denial thereof.

In connection with the claim that the court erred in denying appellant's motion for judgment on the pleadings, it is urged that the matter set forth in the answer as "a further separate defense" constituted matter which should have been answered. The "answer" includes a claim for recovery of alleged usurious interest. This claim is also set up by way of counterclaim and cross-complaint, which plaintiff did answer. An examination of the "answer" indicates that defendant claims the note in question was executed for the accommodation of Shadburne and plaintiff who actually owned the real property on the security of which the loan was purportedly made to Vroman; that Vroman never had any interest in the property, but at Shadburne's request consented to have title to the same stand of record in his name, and to execute the note so secured. Appellant claims that the transaction was therefore without consideration,—a matter of defense which, if alleged, is deemed denied. The answer contained a prayer for the cancellation of the instrument and that it be declared null and void.

Appellant urges that by reason of this prayer the defense becomes an action under Civil Code section 3412, under which an instrument may be "delivered up or canceled." The character of a pleading is to be determined by its content

rather than under a selected designation. (*Robertson* v. *Maroevich,* 42 Cal. App. (2d) 610 [109 P. (2d) 708]; *Cornblith* v. *Valentine,* 211 Cal. 243 [294 Pac. 1065]; *McPheeters* v. *McMahon,* 131 Cal. App. 418 [21 P. (2d) 606].) The matter in question set forth "as a further separate defense," whether or not a subject for the application of section 3412, invokes equitable principles. In *Shain* v. *Belvin,* 79 Cal. 262 [21 Pac. 747], an action upon a promissory note, the court said (pp. 263-264): "The sole point made is, that the document headed 'answer' contains a cross-complaint, and that inasmuch as the plaintiff filed no answer thereto, the defendant should have had judgment thereon by default. The answer contains several denials, and proceeds as follows: 'And for a further and separate answer and defense to said action, defendant avers by way of cross-complaint,' in substance, that the note was without consideration; and then, 'for a further and separate answer and defense to the complaint herein, avers by way of cross-complaint' two facts and a conclusion, which, when taken in connection with the other pleadings, tend to show the thing previously averred, viz., that the note was without consideration. The document concludes with a prayer 'that said note be delivered up for cancellation for general relief, and for costs.' The judgment in favor of the plaintiff was clearly right. In the first place the defendant's pleading does not state facts sufficient to constitute a cause of cross-complaint. Assuming for the purposes of the case that there may be circumstances under which a note which is past due may be ordered to be delivered up and cancelled on the ground that it was without consideration, it seems clear that when the holder brings an action upon it (in which, as a matter of course, he would be entitled to a jury trial), the defendant cannot take the case away from a jury and remove it to the domain of equity by averring affirmatively a legal defense to the action and praying for equitable relief. . . . If matter is pleaded as a defense, it is denied by force of the statute; if it constitutes a cross-complaint, and is pleaded as such, it requires an answer from the plaintiff. It is inconsistent to say that the same matter does and does not require to be answered. The pleader should take one ground or the other, so that his adversary may know how to proceed. If he, as here, 'for further and separate *answer and defense* to the complaint, avers by way of cross-complaint,' etc., the rule that a pleading must be construed against the pleader applies, and as

against him it may be treated merely as a defense. The words 'by way of cross-complaint' may be treated as surplusage. (*Meeker* v. *Dalton,* 75 Cal. 154 [16 Pac. 764].)'' (*Luse* v. *Peters,* 219 Cal. 625 [28 P. (2d) 357].) If it be deemed simply a pleading, showing facts going to the question of want of consideration, that subject, namely, consideration, had been sufficiently pleaded by the respective parties theretofore. An answer which alleges that a note sued upon was given without any consideration states a good defense, without the insertion of probative facts. (*First-Trust Joint S. L. Bk.* v. *Meredith,* 5 Cal. (2d) 214 [53 P. (2d) 958].)

Appellant contends that Shadburne was respondent's agent and that there was no valid delivery of the instrument. In the amended answer and cross-complaint, he denies that there was an execution or delivery of the promissory note for ''a valuable, or any consideration.'' In the answer and further separate defense it is alleged: ''That on or about the 22nd day of December, 1923, said defendant Martin A. Vroman, made, executed and delivered unto said plaintiff a promissory note in words and figures. . . .'' Assuming that appellant signed the note and deed of trust as an accommodation to Shadburne, still it must be admitted that, for the purpose of giving effect thereto, it was intended that the instruments should be delivered.

There is evidence that Shadburne informed appellant he would not be held liable; that his (appellant's) consent to having the property stand in his name and to giving a note secured by deed of trust represented an accommodation to respondent, made ''for the purpose of dressing up the value of the property.'' Appellant's contention is that there was fraud by respondent or his agent in obtaining the instrument, and that the fraud of an agent is imputed to his principal.

There is no evidence that respondent perpetrated a fraud, and on the subject of agency the court, upon evidence from which a reasonable inference to that effect could be drawn, found: ''That it is not true that, at the time of the execution of the note set forth in said complaint, or ever, or at all, said George D. Shadburne, Jr., was acting as the agent of plaintiff in loaning money on real property in said city and county of San Francisco or in the purchase of real property therein; that at all of said times said George D. Shadburne, Jr., was a real estate broker, and as such would offer to plaintiff, as the proposed lender, such loans on real estate,

but that plaintiff was himself passing upon and handling his loan transactions; that at said times defendant Shadburne acted as plaintiff's agent only in the collection of interest and/or installments of principal on loans theretofore made by plaintiff.'' As to the consideration for the note, the court found ''that there was a good and valid consideration for the execution by defendant of said note and deed of trust; that defendant was then already indebted to plaintiff in a sum exceeding $14,000, which amount, together with additional advances made by plaintiff at the time of the execution of said note, represented said sum of $16,500; that plaintiff, at the instance of said Shadburne, (the latter acting as a broker), had theretofore made various loans to defendant and to others on the security of real property in San Francisco; that the amounts of such earlier loans, when repaid, would be again loaned, such new loan being secured by the same or other real estate, with the result that, on July 12, 1922, defendant had executed to plaintiff his note for $14,000 secured by a deed of trust of the real property described in said complaint; that the note referred to in said complaint was in fact partly given in renewal of said loan of July 12, 1922; that there was a further consideration for the note referred to in said complaint in that the same, by its terms, was payable one year after the date thereof; that it is not true that plaintiff, when he accepted said last-mentioned note, or at the time of the execution of the deed of trust by which said note was secured, knew that defendant had no right, title or interest in said real property, or that he received nothing for the execution of said note and deed of trust; that, to the contrary, plaintiff then believed and understood that defendant was the actual owner of said real property, both in fact and as of record, and that he was a responsible borrower possessed of substantial means.''

The evidence shows that from time to time loans to defendant had been made, renewed or increased, any increase in amounts being from funds held by Shadburne for respondent or additional money advanced by the latter. The detriment suffered by the payee has been held to be adequate consideration. In *Crocker Nat. Bank of San Francisco* v. *Say*, 209 Cal. 436, 440 [288 Pac. 69], the court said: ''The fact that the defendants personally did not receive the proceeds of the note would not, of course, render the note void for want of consideration.'' (*Casner* v. *San Diego T. & Sav. Bank,* 34 Cal. App. (2d) 524 [94 P. (2d) 65] ; *Seth* v. *Lew*

*Hing,* 125 Cal. App. 729 [14 P. (2d) 537, 15 P. (2d) 190];
*Bridge* v. *Ruggles,* 202 Cal. 326 [260 Pac. 553].)

This leaves for determination defendant's counterclaim for elimination of the usurious interest. The note, prepared by Shadburne, provided for usurious interest in that it required payment in advance at the rate of 1 per cent per month. Generally where a note provides for usurious interest the payee is entitled to no interest. The court did not determine the amount of recovery which might have been allowed after deduction of the usurious interest for the reason that it found Shadburne would have been precluded from recovering any interest on account of the usurious character of the transaction, and that defendant occupied no better position in this regard than Shadburne would have occupied had he (Shadburne) assumed record ownership of the property and personally executed the note and deed of trust.

Referring to the Usury Act (Stats. 1919, p. lxxxiii, § 3), it was said in *Haines* v. *Commercial Mortgage Co.,* 200 Cal. 609, 619 [254 Pac. 956, 255 Pac. 805, 53 A. L. R. 725], that "the context of the act gives it more of the rating of an action for debt and therefore subject to offsets and counterclaims by defendants." The entire instrument does not become void because of its usurious feature. (*Baker* v. *Butcher,* 106 Cal. App. 358 [289 Pac. 236]; *Rice* v. *Dunlap,* 205 Cal. 138 [270 Pac. 199].) As between those of equal wrong, the position of the borrower is the stronger. (*Westman* v. *Dye,* 214 Cal. 28 [4 P. (2d) 134]; *Norris* v. *York,* 105 Kan. 448 [185 Pac. 43].) Where the lender brings an action to recover an indebtedness, none of the usurious payments, nor payments on renewal notes, are barred by limitation so as to preclude their use in the reduction of the principal debt. (*Westman* v. *Dye, supra; District Bond Co.* v. *Haley,* 2 Cal. (2d) 308 [41 P. (2d) 319]; *Taylor* v. *Budd,* 217 Cal. 262 [18 P. (2d) 333].) Respondent takes no exception to these principles, but contends that appellant "stands in Shadburne's shoes, and cannot assert any defense not available to the latter." We cannot approve this theory as applied to the facts of the present case. To do so would mean that appellant must assume responsibility for the sins of Shadburne, when, as expressed by the court, the defendant, as the result of circumstances, was merely a "dupe" of Shadburne, and, as has often been said, "circumstances alter cases."

Respondent's position is stated as follows: "In a transaction, then, in which Shadburne was employed to draw the papers for respondent, but in which, unknown to respondent, he was in reality the principal and the real party in interest, would he have been allowed to assert that, solely because of the manner in which he had drawn the papers and because of his mistake or fraud, he had not become obligated to pay any interest whatever, but that, to the contrary, any payments he might have made, though at the time explicitly stated to be for. interest and received by respondent in that belief, would in fact be applied in reduction and diminution of the principal, and that respondent would not be entitled to interest in any amount?"

The findings purport to show that there was no intention by plaintiff to violate the usury law, but in a case such as this where upon its face the promissory note discloses that the interest charged does in fact violate such law, intent is immaterial. (*Wood* v. *Angeles Mesa Land Co.*, 120 Cal. App. 313 [7 P. (2d) 748]; *North* v. *Cecil B. DeMille Productions, Inc.*, 2 Cal. (2d) 55 [39 P. (2d) 199]; *Martin* v. *Kuchler*, 212 Cal. 536 [299 Pac. 52].) The cases cited by respondent (*Perry* v. *Shelby*, 196 Ark. 541 [118 S. W. (2d) 849]; *Cooper* v. *Gilbert*, 40 F. (2d) 260) and others, in respect to the importance of "intent" are not entirely in harmony with the California rule.

Respondent contends that the interest payments made were paid by Shadburne and not by appellant, and that the latter, as an original maker of a usurious note, is therefore precluded from rights and privileges under section 3 of the act relating to usury. (Stats. 1919, p. lxxxiii.) If the usurious interest was received by respondent, we can see no difference whether the payments were directly made by appellant or by a third party on his behalf, providing appellant was legally liable as the original maker of the promissory note. A statutory penalty is imposed upon the receipt of usurious interest, and not upon the source of its payment.

If defendant was an innocent "dupe" in the transaction and not a corrupt, collusive confidant who fraudulently inserted a usurious rate of interest for the purpose of defeating an action for interest on the note (66 C. J., p. 278, § 257), he is not estopped to urge the defense of usury. The determination of whether Vroman was a party to a collusive, fraudulent transaction, requires a study of the findings and

the evidence. The nearest approach in the findings to a suggestion that defendant may have been fraudulently connected with the transaction appears as follows: ". . . that defendant, in signing said note and deed of trust, allowed himself to be substituted in said Shadburne's place as the party to be charged."

After respondent rested in rebuttal, the trial court, for the purpose of indicating the findings that should be prepared, expressed its views as to the transaction and the interest of the respective parties therein as follows: ". . . this controversy revolves around the perfidy and bad faith and corruption of George D. Shadburne, Jr. . . . I have no doubt at all that both Mr. Paillet and Mr. Vroman have come into court in perfect good faith, and that they are telling the truth according to their perception of the facts, in line with what they know about those facts. I do not think either one of these parties is acting in bad faith at all. On the one hand, I think Mr. Paillet, as a result of the chicanery and duplicity of Shadburne, and reposing undeserved confidence in him, did make a loan and parted with actual cash in making such loan, on the Sixth Street property. I am willing to make a finding to that effect. . . . I feel quite sure, and I am willing to find, that Mr. Vroman never got any of this money, that he never benefited or had any interest in the transaction, that he never had any financial interest himself in this Sixth Street property or the loan or the money derived from the loan on that property. I am deeply confident of that fact. Mr. Paillet was a large lender and an excellent client, or dupe, you might say, of Mr. Shadburne. Mr. Vroman was a small client and a smaller dupe of the same individual. . . . I feel that Mr. Vroman insofar as he was an instrument to this and other transactions in which his name was used, was simply employed by Shadburne as the means of perfecting, accomplishing his nefarious ends. . . . The evidence here, Mr. Paillet's own evidence, is to the effect that he never saw Mr. Vroman, never met him, until after Mr. Shadburne had died, when Mr. Vroman, according to Mr. Paillett's testimony, called upon him to discuss what Mr. Paillet knew about the man who had mutually victimized them." The above quotation has been considered in conjunction with the evidence as it appears in the transcript on appeal for the purpose of discovering the process by which the trial judge reached his conclusion. (*Union Sugar Co.* v.

*Hollister Estate Co.,* 3 Cal. (2d) 740 [47 P. (2d) 273] ; *Estate of Yorba,* 176 Cal. 166 [167 Pac. 854].)

That the trial court was incorrect in holding that defendant was estopped from availing himself of the defense of usury and in rendering judgment for $14,210.25, is further supported by the fact that, at the opening of the trial, in a statement of the legal issues involved and the facts to be presented, the attorney for the plaintiff said: ''As I understand it, the sum I just mentioned, $6,647.75, is all the plaintiff can recover in this action. We can't recover interest for any period of time under the decisions, because the covenant to pay interest was invalid.'' In substance this statement was repeated during the trial.

In the face of the record it is necessary to remand the case to the superior court for the purpose of rendering judgment for an amount to be determined in accordance with the views expressed herein.

The judgment is reversed.

Peters, P. J., and Knight, J., concurred.

A petition for a rehearing was denied June 27, 1942, and respondent's petition for a hearing by the Supreme Court was denied July 23, 1942.