Filed 11/16/21  Shell v. Van Dyke CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| DAVID M. SHELL, | C091383 |
| Plaintiff and Appellant, | (Super. Ct. No. TCU187047) |
| v. | |
| STEPHANIE VAN DYKE et al., | |
| Defendants and Respondents. | |

This case arises out of a dispute over the repayment of loans obtained by defendants Stephanie Van Dyke (Stephanie), Glen Van Dyke (Glen), and the Van Dyke Law Group (VDLG) (collectively, defendants).[1]  Plaintiff David Shell, a self-represented litigant, brought suit against defendants for breach of contract and related claims.  After a four-day bench trial, judgment was entered against Shell on all of his claims, except for

---

[1]  Because Stephanie and Glen share the same last name, we refer to them by their first names to avoid confusion.

1

his conversion claim against VDLG. Shell appeals, contending reversal is required for a variety of reasons. We agree with Shell's assertion that the trial court incorrectly calculated the prejudgment interest awarded on his conversion claim and remand for recalculation of interest on that claim. In all other respects, we affirm the judgment.

## BACKGROUND

A. *Preliminary Matters*

At the outset, we note that the lack of a complete appellate record hinders our review of this appeal. The California Rules of Court provide an appellant with a choice of several types of records upon which to take an appeal. The choices include a reporter's transcript, a clerk's transcript, an agreed statement, and a settled statement. (California Rules of Court, rules 8.831, 8.832, 8.834, 8.836, 8.837.)[2] Shell has elected to proceed with a clerk's transcript and a partial reporter's transcript. Although the underlying bench trial took place over four days, Shell only listed two of the four days in his notice designating the reporter's transcript on appeal. As a consequence, we have no transcript for the first two days of trial. Nor is there a suitable substitute such as an agreed or settled statement. (Rules 8.134, 8.137.) The only trial testimony in the appellate record is Glen's testimony on redirect examination and Shell's testimony. We note that a self-represented party is not exempt from the rules of appellate practice. (See *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.)

In addition to an incomplete appellate record, Shell's opening brief fails to provide an adequate summary of the significant facts, as required by Rule 8.204(a)(2)(C). (*Silva v. See's Candy Shops, Inc*. (2016) 7 Cal.App.5th 235, 260, disapproved on another ground in *Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58, 77.) While Shell's opening brief provides an overview of the procedural history of this case, the claims

---

[2] All further rule references are to the California Rules of Court.

2

alleged in the complaint, and the trial court's posttrial findings, Shell failed to coherently summarize the basis for his claims (including each party's role in the loan transactions at issue) or summarize the relevant trial testimony in the record. Instead, Shell asserts that the "definitive facts are not in dispute," and then identifies numerous legal issues for our review on appeal. The respondent's brief, unfortunately, suffers from similar deficiencies. In his reply brief, Shell insists that there are "no disputed facts" and all "dispositive facts are undisputed."

Because Shell does not challenge the sufficiency of the evidence supporting the trial court's findings, we summarize only the pertinent facts as found by the trial court and add facts where necessary to provide adequate context for the disposition of the issues raised on appeal. Additional information relevant to Shell's contentions will be set forth, as necessary, in the Discussion section.

B. *Factual Background*

Glen is an attorney. At all relevant times, he was the sole owner, shareholder, and officer of VDLG, a professional law corporation. Stephanie was the office manager for VDLG.

From 2009 through 2015, Shell and his wife, Marliee Keene, provided litigation support services to VDLG under the business name Xth Legion. The services were provided to VDLG in exchange for $7,000 per month. Beginning in January 2016, Shell provided similar services to VDLG under the business name Caesar's Legion, Ltd.

In August 2014, Shell agreed to loan Glen $20,000 to pay for expenses owed by VDLG and on August 21, 2014, Keene wrote a check to VDLG in that amount.[3]

---

[3] At trial, Shell testified that the money loaned to defendants came from a bank account he shared with Keene. It is undisputed that Shell and Keene were "equal co-Lenders" of the money borrowed in this case.

Less than two weeks later, VDLG paid Keene $10,000, thereby reducing the debt owed to $10,000. In mid-September 2014, Glen and Stephanie asked Shell for another $20,000 loan to pay for expenses owed by VDLG. On September 29, 2014, Keene wrote a check to VDLG in that amount. On the same day, Glen and Keene executed an unsecured promissory note in the sum of $30,000, representing the remaining $10,000 VDLG owed to Keene and the additional $20,000 borrowed from Keene. The promissory note reflects that Glen, not VDLG, was the borrower. This loan did not bear interest, was to mature as of September 30, 2015, and obligated VDLG to pay Keene 10 percent of any legal fees it received in the amount of $40,000 or greater. In connection with this loan, VDLG, through Glen, orally agreed to pay $500 per month until the $30,000 loan was paid off. At the time this oral agreement was made, both sides agreed that the monthly payments would not reduce the principal balance of the debt. Although the nature of the monthly payments was disputed at trial, the trial court found that the payments constituted interest payments based on the conduct of Glen, Keene, and Shell.

In October 2014, Keene agreed to loan Glen and Stephanie an additional $20,000. On October 29, 2014, Glen, Stephanie, and Keene executed an unsecured promissory note in the sum of $20,000, representing $14,000 that VDLG owed Xth Legion for litigation support services (i.e., two months of services), and $6,000 of new money that was paid directly to Stephanie. This loan did not bear interest, was to mature as of September 30, 2015, and obligated VDLG to pay Keene 10 percent of any legal fees it received in the amount of $40,000 or greater. On that same date, VDLG and Keene executed a separate unsecured promissory note in the amount of $44,000, which supplanted the earlier $30,000 promissory note in which Glen was the borrower, and documented an additional $14,000 of debt incurred by VDLG. This loan did not bear interest, was to mature as of September 30, 2015, and obligated VDLG to pay Keene 10 percent of any legal fees it received in the amount of $40,000 or greater. In connection

4

with this loan, the parties orally agreed that the monthly payments, not applicable to the principal balance of the debt, would increase from $500 to $1,000.

Thus, as of October 29, 2014, VDLG owed Keene $44,000 and Glen and Stephanie owed Keene $20,000.[4] It is undisputed that Glen was responsible for the repayment of the sums due under the promissory notes, either individually or on behalf of VDLG. In February and October 2015, VDLG made payments, totaling $20,000, that were applied to the principal balance of VDLG's loan, thereby reducing the debt owed to $24,000. No defendant objected to these payments being applied to reduce the principal balance of VDLG's loan. From October 2014 to April 2017, a total of $30,600 in monthly payments were made, consisting of one payment of $500, 29 payments of $1,000, and one payment of $1,100.

In June and July 2017, Glen and Shell exchanged a series of e-mails regarding a case known as the R Street litigation. As part of this exchange, Glen indicated that the case had settled and that he intended on using his share of the settlement funds (approximately $37,000) to "finish paying [Shell] off." But Glen did not provide Shell or Keene his share of the settlement funds from the R Street litigation, despite a demand from Shell to do so.

At various times in 2016 and 2017, Keene sent defendants a purported accounting of the debt owed under the promissory notes. No defendant objected to any of these accountings.

On October 29, 2017, Stephanie wrote Keene a check in the sum of $17,935.93. The memo line of the check stated that it was intended to be full and final payment to Keene and Shell on "any loan." The check was not cashed by Keene or Shell; it was returned.

---

[4] All further references to "promissory notes" are to the promissory notes executed on October 29, 2014.

5

In November 2017, Keene advised defendants in writing that she had assigned all of her rights under the promissory notes to Shell.

C. *Procedural Background*

In July 2018, Shell, proceeding as a self-represented litigant, filed a verified complaint against defendants alleging four claims for relief: (1) breach of contract against all defendants due to their failure to repay the loans; (2) conversion against Glen and VDLG for failure to assign Shell the legal fees obtained from the R Street litigation; (3) fraud against Glen and Stephanie based on their execution of a promissory note they had no intention of repaying, and their failure to disclose the collection of legal fees by VDLG that would have triggered the assignment clause in the promissory notes; and (4) account stated against all defendants based on their failure to pay or object to the indebtedness in the accountings provided by Keene.

In October 2018, defendants filed a verified answer to the complaint. In answering the complaint, defendants admitted that they borrowed the money at issue in this case, orally agreed to pay $500 per month in consideration for one of the loans, and orally agreed to pay $1,000 per month in exchange for the additional loan. Defendants denied that the legal fees obtained from the R Street litigation were assigned to Shell, and denied that they owed Shell any money on the account stated claim. Defendants also alleged numerous affirmative defenses, including that Shell charged and accepted usurious, and therefore illegal, interest of $1,000 per month on a debt of $44,000, and that "any award of damages that [Shell] may obtain in this action must be offset by the amount that is owed to defendants."

After a four-day bench trial and the submission of posttrial briefing, the trial court issued a final posttrial statement of decision in December 2019. As for the breach of contract claim, the court ruled in favor of defendants, concluding that the promissory notes had been fully satisfied. In so concluding, the court found that the monthly payments, which totaled $30,600, were interest payments, and that the rate of interest on

6

the borrowed funds greatly exceeded the maximum rate of interest permitted under the usury law. As a consequence, the court applied the usurious interest collected from October 2014 to April 2017 to "retire" the remaining $24,000 of debt owed by VDLG and then to reduce the principal balance of Glen and Stephanie's debt by $6,600, resulting in an unpaid balance of $13,400. The court went on to explain that the evidence adduced at trial showed that defendants provided Shell a cashier's check in the sum of $13,435.93 in January 2019, thereby resulting in an overpayment on Glen and Stephanie's loan in the amount of $35.93.

As for the conversion claim, the trial court ruled in favor of Shell as to VDLG but against Shell as to Glen. The court found that a valid assignment of the legal fees from the R Street litigation had been made and then breached, and that Shell was entitled to prejudgment interest in the sum of $7.16. In reaching this figure, the court explained that Shell was deprived of $13,400 from the date VDLG received the legal fees from the R Street litigation (October 17, 2017) to the date a check was tendered to Keene in the sum of $17,935.93 (October 29, 2017). The court used an interest rate of one-and-a-half percent to calculate the prejudgment interest award. The court went on to conclude that, because the legal fees obtained from the R Street litigation belonged to VDLG, the conversion claim had no "vitality."

As for the fraud claim, the court ruled in favor of Glen and Stephanie, finding that the claim suffered from "two fatal failures of proof": (1) the evidence adduced at trial failed to show that Glen and Stephanie did not intend to repay their loan at the time it was made; and (2) there was no evidence adduced at trial showing that VDLG received sufficient legal fees (i.e., $40,000 or greater) to trigger the assignment clause in the promissory notes and a duty on the part of Glen and Stephanie to disclose the receipt of such fees. The court reasoned that, because Shell's fraud claim failed, it did not need to address the issue of punitive damages.

Finally, as for the account stated claim, the trial court ruled in favor of defendants. The court found that this clam failed for three reasons, which we need not recount, as Shell does not challenge this portion of the trial court's ruling.

Shell timely appealed. The case was fully briefed in February 2021 and argued at Shell's request on September 21, 2021.

## DISCUSSION

Shell's opening brief identifies nine legal issues for our review on appeal. According to Shell, "The resolution of this appeal will primarily rest on whether judicial admissions made by responses to requests for admissions, and through the pleadings, conclusively establish . . . Shell's . . . right to a different judgment than that entered below." Shell further asserts: "This court will also be presented with issues relating to set offs allowed by the trial court, the trial court's failure to consider and award prejudgment interest as required by law, the trial court combining two notes, with different borrowers, into a single debt for purposes of determining what was owed on the separate notes, and the trial court's failure to consider whether punitive damages were appropriate after finding that a conversion had occurred."

As we shall explain, we agree with Shell's assertion that the trial court erred in calculating the prejudgment interest awarded on his conversion claim and remand for further proceedings. We otherwise reject Shell's claims of error and affirm the judgment.

I

*Standard of Review and Scope of Appellate Review*

"In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo. [Citation.] We apply a substantial evidence standard of review to the trial court's findings of fact. [Citation.] Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings." (*Thompson v. Asimos* (2016)

8

6 Cal.App.5th 970, 98.) Under "the doctrine of implied findings, the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 48.)

"[A] judgment or order of the trial court is presumed correct and prejudicial error must be affirmatively shown. [Citation.] 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." ' [Citation.] This general principle of appellate practice is an aspect of the constitutional doctrine of reversible error. [Citation.] ' "A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' [Citation.] 'Consequently, [appellant] has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [appellant].' " (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.)

Where the order appealed from resulted from a trial, the "lack of a verbatim record of such proceedings" such as a reporter's transcript will ordinarily be "fatal to a litigant's ability to have his or her claims of trial court error resolved on the merits by an appellate court." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608.) "This is so because it is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, *on the basis of the record presented to the appellate court*, that the trial court committed an error that justifies reversal of the judgment." (*Id*. at pp. 608-609, italics added.) When, as here, the appellant does not provide the complete reporter's transcript of the proceedings on appeal, with regard to any evidence-based arguments, "it is presumed that the unreported . . . testimony would demonstrate the absence of error," unless error is apparent on the

face of the existing appellate record. (See *Estate of Fain* (1999) 75 Cal.App.4th 973, 992.) "Whether legal or factual, no error warrants reversal unless the appellant can show injury from the error." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286 (*City of Santa Maria*).) "[T]o demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis." (*Id.* at pp. 286-287.) We may and do "disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt." (*Id.* at p. 287.)

II

*Judicial Admissions*

A. *Discovery Responses*

Shell contends the judgment must be reversed because the trial court was required to find that "no usury occurred" as a matter of law. According to Shell, judicial admissions obtained through discovery responses (requests for admissions) conclusively established that defendants did not pay any interest on the loans. We disagree.

1. *Applicable Legal Principles*

"A judicial admission is a party's unequivocal concession of the truth of a matter, and removes the matter as an issue in the case." (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 48.) "Judicial admissions may be made in a pleading, by stipulation during trial, or by response to request for admission." (*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 746.)

The purpose of the request for admission procedure is "to expedite trials and to eliminate the need for proof when matters are not legitimately contested." (*St. Mary v. Superior Court* (2014) 223 Cal.App.4th 762, 783.) Thus, any matter admitted in response to a request for admission is conclusively established against the party making the admission, unless the court has permitted withdrawal or amendment of the admission. (Code Civ. Proc., § 2033.410, subd. (a); *Murillo v. Superior Court* (2006) 143

10

Cal.App.4th 730, 736.) "Although admissions are dispositive in most cases, a trial court retains discretion to determine their scope and effect." The court may determine whether an admission accurately reflects the truth in light of other evidence in the case. (*Fredericks v. Kontos Industries* (1987) 189 Cal.App.3d 272, 277.) Further, the trial court has "discretion to admit evidence to elucidate and explain an admission, because the admission of a fact does not always reflect the party's reasonable understanding of that fact." (*Id*. at p. 278.)

2. *Analysis*

In support of his position that the loan transactions at issue in this case did not involve the lending of money with usurious rates of interest, Shell points to several trial exhibits containing defendants' responses to his requests for admissions. A review of those documents reveals that, in response to a question asking defendants to admit whether they contended the $1,000 monthly payments were interest payments made to Shell, each defendant stated: "*Admit that at the time each payment was made, Responding Party believed it was an interest payment. Legally, each payment was a principal payment, and based thereon, Responding Party denies this request*." (Italics added.) In other discovery responses, each defendant admitted that the $1,000 monthly payments were principal payments, although they believed the payments were interest payments at the time they were made, and that no interest was paid on the loans. Shell also points to pretrial statements made by Glen, which Shell claims are consistent with a finding that defendants did not pay any interest on the loans. As we explain, we find no error in the trial court's determination that the monthly payments at issue here were interest payments.

On the third day of trial, Shell stated that he wanted to make a continuing objection to the admission of any evidence that was contrary to the discovery responses in which the defendants admitted that they never paid any interest on the loans. In response, the trial court reminded Shell it had previously ruled that the discovery

11

responses did not foreclose defendants from making the legal argument that they did not pay any interest on the loans because, although they believed the monthly payments were interest payments at the time they were made, the payments amounted to usurious interest payments, and therefore amounted to principal payments as a matter of law.

In the trial court's final posttrial statement of decision, it concluded the monthly payments were interest payments subject to the usury law. The court reasoned that the written correspondence between the parties (i.e., the "contemporaneous paper trail") showed that Keene, Shell, and Glen considered the monthly payments to be interest payments, and that the conduct of the parties was the most persuasive evidence of their intent, which "essentially" foreclosed Shell's contrary "clever" pleading and discovery arguments (i.e., his judicial admission theory).

We see no error. Shell does not argue that the trial court's finding as to the nature of the monthly payments is not supported by substantial evidence. Indeed, there is ample evidence in the record to support the conclusion that the monthly payments at issue in this case were interest payments, including defendants' trial testimony[5] and multiple communications between Shell and Glen, all of which showed the payments were interest payments that were made in exchange for obtaining the loans. Shell has not shown that the trial court erred in hearing evidence as to the scope and effect of the discovery responses and concluding that the monthly payments were interest payments. (See *Smiley v. Citibank* (1995) 11 Cal.4th 138, 152 [" '[i]nterest is the compensation allowed by law, or fixed by the parties, for the use or forbearance of money' "]; Civ. Code, § 1915 [same].) The discovery responses Shell relies on to support a different result make clear

---

[5] At trial, Shell testified that Glen promised to make the monthly payments "in order to induce and secure the loans." When asked, Shell acknowledged that there were many documents admitted at trial in which he referred to the monthly payments as interest payments.

that defendants believed no interest had been paid on the loans because, although they believed the monthly payments were interest payments at the time they were made, the monthly payments amounted to usurious interest payments, and therefore the payments were principal payments as a matter of law. Contrary to Shell's contention, the trial court did not abuse its discretion to decide the scope and effect of defendants' discovery responses after hearing the evidence adduced at trial. The court properly admitted evidence of the parties' understanding of the payments. Evidence of this understanding did not contradict the plain meaning of the admissions in the discovery responses, but rather explained them. To the extent Shell argues the court was required, as a matter of law, to treat the discovery responses as judicial admissions that the monthly payments were not interest payments subject to the usury law, he is mistaken.

In his briefing and at oral argument, Shell relied on this court's decisions in *Joyce v. Ford Motor Co.* (2011) 198 Cal.App.4th 1478 and *Stover v. Bruntz* (2017) 12 Cal.App.5th 19. Shell's reliance is misplaced, as those cases are readily distinguishable. In *Joyce*, Ford Motor Company (Ford) admitted, in response to a pretrial request for admissions, that the vehicle at issue in the case was a "new motor vehicle" within the meaning of the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790, et seq.; the Act). (*Joyce*, at p. 1489.) A panel of this court concluded that this matter was conclusively established against Ford, "regardless of the fact that Ford prefaced its responses to the request for admissions with a general objection that it had not 'completed its investigation of the facts,' and that the responses were prepared 'on the basis of information presently available to and located by [Ford] upon reasonable investigation.' " (*Ibid.*) In so concluding, the *Joyce* court noted that it was unaware of any authority establishing that "an unqualified 'Admit' in response to a specific admission request can be negated by prefacing the entire document with a general disclaimer that the investigation was ongoing." (*Ibid.* [explaining that if Ford lacked sufficient information or knowledge to admit or deny whether the vehicle qualified as a

13

"new motor vehicle" under the Act, then it should have stated as much in response to that specific request for admission].)  In *Stover*, a panel of this court rejected a pro se litigant's argument that the trial court erred in deeming the opposing party's request for admissions admitted and in failing to set the admissions aside.  (*Stover*, at pp. 30-31.) The litigant did not dispute that she failed to timely respond to the requests for admissions; rather, she argued that the admissions should have been set aside because she was unfamiliar with the discovery statutes.  (*Id*. at p. 31.)  Citing the well-established rule that self-represented litigants are not exempt from following the rules of procedure, the *Stover* court concluded that the litigant was not immune from the consequences of failing to do so and was not entitled to submit belated responses to the requests for admissions without first moving the trial court to have the deemed admissions withdrawn, which she failed to do.  (*Ibid.*)

Here, the discovery responses at issue clearly gave rise to an issue involving a mixed question of law and fact, and thus did not constitute judicial admissions as to the nature of the monthly payments.  (See *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 800 ["the question of whether a transaction is usurious is generally a mixed question of fact and law"]; *Stroud v. Tunzi* (2008) 160 Cal.App.4th 377, 384 [the doctrine of judicial admissions applies to unequivocal statements of fact; legal conclusions and assertions involving mixed questions of law and fact do not qualify]; *Elliott v. Geico Indemnity Co*. (2014) 231 Cal.App.4th 789, 799 [" '[J]udicial admissions involve facts, not legal theories or conclusions' "].)

B.  *Pleadings*

Shell also contends the trial court failed to give proper effect to matters established by judicial admissions through the pleadings.  According to Shell, he was entitled to entry of judgment in his favor on his fraud claim because the trial court should have deemed true certain allegations of the complaint, (e.g., the allegations in paragraphs 95-100 of the

14

complaint), as the answer generally, not specifically and positively, denied these allegations. We disagree.

"A general denial is a blanket denial of the whole complaint." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2020) ¶ 6:403.) With one exception not applicable here, a general denial is not sufficient to controvert a verified complaint; the allegations in a verified complaint must be denied positively or according to information and belief. (Code Civ. Pro., § 431.30, subd. (d); see *Paul Blanco's Good Car Co. Auto Group v. Superior Court* (2020) 56 Cal.App.5th 86, 111 [a general denial suffices in limited jurisdiction cases or when the complaint is not verified].) Any material allegation in the complaint that is not controverted by the answer is deemed admitted. (Code Civ. Pro., § 431.20, subd. (a); *Hennefer v. Butcher* (1986) 182 Cal.App.3d 492, 504.) "Anything less than a general denial of the whole complaint is a 'qualified' or 'specific' denial." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2020) ¶ 6:412.)

Contrary to Shell's contention, Glen and Stephanie's response to paragraphs 95-100 of the complaint did not amount to a judicial admission as to any of the material facts alleged therein. Although the complaint was verified, the verified answer contained specific denials of the allegations in paragraphs 95-100 by reference to the entire paragraph. Under the modern pleading rules, the denial of allegations may properly be stated by reference to specific paragraphs or parts of the complaint. (Code Civ. Pro. § 431.30, subd. (f); 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 1063, p. 499; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2020) ¶ 6:413 [defendant can deny specific sentences, paragraphs or parts of the complaint].) That is exactly what occurred here. For example, as to paragraph 95 of the complaint, the answer stated: "Defendants deny the allegations in paragraph 95 of the Complaint." The defendants' responses to paragraphs 96-100 of the complaint were similar in all material respects.

15

But even were we to agree with Shell's judicial admission theory with regard to paragraphs 95-100 of the complaint, Shell has failed show that the judgment must be reversed. " 'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) " 'Promissory fraud' is a subspecies of the action for fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud." (*Ibid*; see Civ. Code, § 1710, subd. (4) [defining deceit as the making of a promise "without any intention of performing it"].)

In answering the complaint, defendants specifically denied the allegation in paragraph 94, which alleged that Glen and Stephanie did not intend to repay the $20,000 loan, as evidenced by the October 29, 2014 promissory note, at the time the loan was made. Defendants also specifically denied that the allegations described in paragraph 51 showed that Glen and Stephanie had taken actions which evidenced their intent, at the time the promissory note was executed, to never repay the $20,000 loan. In ruling in favor of Stephanie and Glen on the fraud claim, the trial court found that the evidence adduced at trial did not show that they had no intention of repaying the $20,000 loan at the time it was made. In other words, the court found that the fraud claim failed for lack of proof on the intent element. Shell has not shown that the trial court erred in making this finding. Shell does not make a sufficiency of the evidence argument. And, contrary to Shell's contention, the answer cannot be read to contain any judicial admission conclusively establishing the intent element of the fraud claim.

Finally, we reject Shell's contention that Stephanie and Glen admitted the allegations in paragraph 104 of the complaint, which alleged: "In taking the actions described herein Stephanie and Glen acted with oppression, malice, and fraud. Plaintiff

16

is entitled to an award of punitive damages as a result thereof." The answer specifically denied these allegations, stating: "Defendants deny the allegations in paragraph 104 of the Complaint." This is a specific denial; it does not amount to a judicial admission of any fact alleged in paragraph 104. For the same reason, we reject the similar argument made by Shell regarding punitive damages as to his conversion claim.

III

*Usurious Interest and Offsets*

Shell contends that, assuming the trial court correctly determined the monthly payments were usurious interest payments, the court erred in the manner it credited the payments against the principal balance owed. We see no error.

A. *Applicable Legal Principles*

" ' "Usury is the exacting, taking or receiving of a greater rate than is allowed by law, for the use or loan of money." [Citation.] A transaction is usurious if there is a loan at greater than the legal rate of interest or an exaction at more than the legal rate for the forbearance of a debt or sum of money due. . . .

" 'California Constitution, article XV, section 1 limits the interest rate for a "loan or forbearance" of money not primarily for personal, family or household purposes, to the higher of: (1) 10 percent per annum or (2) 5 percent plus the rate of interest prevailing on the 25th day of the month preceding the earlier of the date of the extension of the contract to make the loan or forbearance or the date of making the loan or forbearance, established by the Federal Reserve Bank of San Francisco on advances to member banks under sections 13 and 13(1) of the Federal Reserve Act.' . . .

" ' "When a loan is usurious, the creditor is entitled to repayment of the principal sum only. He is entitled to no interest whatsoever. [Citations.]" [Citation.]' [Citation.] 'The attempt to exact the usurious rate of interest renders the interest provisions of a note void. [Citations.]' [Citation.] Furthermore, interest payments that were made at the usurious rate should be credited against the principal balance in any action to collect on

17

the note." (*Hardwick v. Wilcox* (2017) 11 Cal.App.5th 975, 978-979; see *Garver v. Brace* (1996) 47 Cal.App.4th 995, 1000 ["payments on a usurious note are deemed to apply first to principal"]; *Winnett v. Roberts* (1986) 179 Cal.App.3d 909, 921 ["When a loan is usurious, the creditor is entitled to repayment of the principal sum only. He is entitled to no interest whatsoever."]; *Shirley v. Britt* (1957) 152 Cal.App.2d 666, 669-670 [usurious interest paid by the borrower should be applied as an offset to reduce the borrower's principal obligation to the lender].

B. *Analysis*

In determining that the monthly payments at issue in this case were usurious interest payments that must be credited against the principal balance of the loans, the trial court stated: "Interest is defined as 'the compensation allowed by law or fixed by the parties for the use, or forbearance, or detention of money.' [Citation.] At trial, Shell initially testified that the oral promise by Glen to make monthly payments not to be applied to reduce principal was an inducement for Keene to make the loans, but then recanted that testimony. Shell thereafter could not identify any separate consideration whatsoever to support the promise to make these monthly payments. All parties contemporaneously treated these monthly payments as interest, and, consistent with the authority of *Warner Construction*,[6] the court finds that contemporaneous conduct the most probative evidence of this subject.

"That rate of interest on the $64,000 borrowed greatly exceeds the maximum amount of interest permitted by California's usury laws. [Citations.] By law, usurious interest collected by a lender is to be applied to reduce unpaid principal. [Citation.]

---

**6** See *Warner Construction Corporation v. City of Los Angeles* (1970) 2 Cal.3d 285, 296-297 ["The 'construction given the contract by the acts and conduct of the parties with knowledge of its terms, *before any controversy has arisen as to its meaning*, is entitled to great weight and will, when reasonable, be adopted and enforced by the court.' "].)

18

"Therefore, the court will apply the $30,600 of usurious interest collected as follows: First to retire the $24,000 of principal owed by VDLG on its note [citation] after [applying] the two principal reduction payments totaling $20,000 [citations]; and Second, once that note is satisfied, the remainder of $6,600 of usurious interest to retire a portion of the personal note payable by Glen[] and Stephanie [citation]. That leaves an unpaid balance on the personal note as of April 29, 2017 of $13,400.00. By cashier's check dated 1/22/2019, defendants paid to Shell $13,453.93. [Citation.] That results in an over-payment on the personal note of $35.93 as of the trial of this matter.

"The contemporaneous conduct of the parties, in the accountings by Shell for the two principal reduction payments (without objection by defendants)[] and the fact that both of those payments were made on checks drawn on VDLG's account [citations], indicates that the proceeds paid to Shell were to be applied first to satisfy the $44,000.00 note payable by VDLG. The court has followed that protocol in its application of the usurious interest payments and the subsequent cashier's check. Based on the application of usurious interest to the remainder of the two notes, all principal has been repaid, and judgment will enter in favor of VDLG, Glen and Stephanie as to the first cause of action, as the notes have been fully satisfied." (Footnote added and footnote omitted.)

Assuming the monthly payments were interest payments, Shell does not challenge the trial court's determination that the interest rate charged exceeded the legal rate of interest allowed under the usury law. Nor does he dispute that the remedy in such a situation is to credit the usurious interest collected against the principal balance owed by the borrower. Instead, he argues that the monthly payments and the subsequent lump sum payment of $13,435.93 were improperly credited against the principal balance due under the "personal note," i.e., the $20,000 promissory note executed by Glen and Stephanie. He contends this was error because these payments were made by VDLG and there was no "mutuality of parties between the notes." Shell asserts that "each note must be treated separately" because "[m]utuality of parties is essential to a set-off." He insists

19

that the trial court erred in combining the promissory notes into a single debt. In support of his position, Shell cites, without discussion, *Harrison v. Adams* (1942) 20 Cal.2d 646, 650.

We conclude that Shell has failed to carry his burden to show reversible error. His conclusory argument is not supported by citation to authority and meaningful legal analysis. " 'We are not bound to develop appellants' argument for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' '" (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*).)

Shell repeatedly insists that it was improper for the trial court to credit the payments made by VDLG against the principal balance owed on Glen and Stephanie's loan. However, he fails to explain how he was injured by this purported error. Nor does he acknowledge that the promissory notes specifically contemplate that VDLG would repay the loans from the legal fees it obtained. Although unclear, Shell appears to take the position that he was injured because repayment of the principal balance of Glen and Stephanie's loan prevented him from collecting prejudgment interest on that loan. However, he offers no authority for this proposition. We observe that, in the proper case, usurious interest payments made by a third party may be credited to the principal owed by the borrower. (*Paillet v. Vroman* (1942) 52 Cal.App.2d 297, 306-308.) In *Paillet*, the court reasoned: "If the usurious interest was received by [the lender], we can see no difference whether the payments were directly made by [the borrower] or by a third party on his behalf. . . . A statutory penalty is imposed upon the receipt of usurious interest, and not upon the source of its payment." (*Id*. at p. 306.) We find this reasoning persuasive and conclude that it forecloses Shell's claim of error here.

We also reject Shell's contention that the trial court erred in crediting the monthly interest payments against the principal balance of Glen and Stephanie's loan because the answer limited the affirmative defense of usury to VDLG's loan of $44,000. Shell

20

provides no cogent legal argument or citation to authority in support of his position; thus, his claim of error is waived. (*Cahill, supra,* 194 Cal.App.4th at p. 956.) In any event, the claim fails on the merits. The fourth affirmative defense in the answer alleges that "any award of damages that [Shell] may obtain must be offset by the amount that is owed to defendants." When, as here, a lender brings an action to recover an indebtedness, the payments of usurious interest may be set off against the principal debt owed. (*Hardwick v. Wilcox, supra,* 11 Cal.App.5th at p. 992.) " '[T]he instant a payment is made of usurious interest it is applied to the principal, and the principal indebtedness at the time of such payment is reduced to the extent thereof.' " (*Ibid.*) As explained in *Hardwick*, "the set off [is] not an award of affirmative relief to [the borrower], but a defense to [the lender's] causes of action to recover on [the] notes." (*Ibid.*) Therefore, in " ' "an action to recover an indebtedness, none of the usurious payments, . . . are barred by limitation so as to preclude their use in the reduction of the principal debt." ' " (*Ibid.*)

Finally, we reject Shell's contention that reversal is required because the trial court improperly applied the usurious interest payments to reduce the damages awarded on his conversion claim. Shell does not offer cogent legal argument supported by citation to authority demonstrating error or injury from this purported error. (*City of Santa Maria, supra*, 211 Cal.App.4th at pp. 286-287.)

IV

*Prejudgment Interest*

A.  *Breach of Contract Claims*

Shell contends the trial court erred in failing to award prejudgment interest on his breach of contract claims. Citing Civil Code section 3289, subdivision (b), Shell argues that he was entitled to prejudgment interest, at the rate of 10 percent per annum, beginning on the date of breach, September 30, 2015 (i.e., the date the promissory notes matured). We disagree.

21

"If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach."  (Civ. Code, § 3289, subd. (b).)  The law permits the recovery of interest at the legal rate from the date of maturity of a usurious loan.  (*Epstein v. Frank* (1981) 125 Cal.App.3d 111, 122-123.)

Civil Code section 3287 provides:  "A person who is entitled to recover damages *certain, or capable of being made certain by calculation*, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day, except when the debtor is prevented by law, or by the act of the creditor from paying the debt."  (Civ. Code, § 3287, subd. (a), italics added).)  " ' " 'Damages are deemed certain or capable of being made certain within the provisions of subdivision (a) of [Civ. Code] section 3287 where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage.' [Citations.]" [Citation.]  Thus, " ' "[t]he test for recovery of prejudgment interest under [Civ. Code] section 3287, subdivision (a) is whether *defendant* actually know[s] the amount owed or from reasonably available information could the defendant have computed that amount. [Citation.]" [Citations.]  "The statute . . . does not authorize prejudgment interest where the amount of damage, as opposed to the determination of liability, 'depends upon a judicial determination based upon conflicting evidence and it is not ascertainable from truthful data supplied by the claimant to his debtor.' [Citations.]" [Citation.]  Thus, *where the amount of damages cannot be resolved except by verdict or judgment, prejudgment interest is not appropriate*.' " ' "  (*Warren v. Kia Motors America, Inc*. (2018) 30 Cal.App.5th 24, 44.)

It is clear from the record that prejudgment interest was not authorized on Shell's breach of contract claims.  In resolving the merits of these claims, the trial court needed to decide the disputed issue of whether the monthly payments were usurious interest

22

payments that must be credited against the principal balance of the loans.  The amount of damages suffered by Shell was disputed and depended on the trial court's determination of the nature of the monthly payments; thus, prejudgment interest was not warranted.

B.  *Conversion Claim*

As explained *ante*, in its final posttrial statement of decision, the trial court determined that the R Street legal fees were assigned to Shell and wrongfully converted by VDLG when the fees were not transferred to Shell.  The court further determined that, after considering the usurious interest payments, Shell was entitled to an award of prejudgment interest on the converted funds in the sum of $7.16.  In reaching this figure, the court explained that Shell was deprived of $13,400 from the date VDLG received the legal fees from the R Street litigation (October 17, 2017) to the date a check was tendered to Keene in the sum of $17,935.93 (October 29, 2017).  The court applied an interest rate of one and one half percent to calculate the interest award.

Shell contends the trial court erred in selecting that interest rate in calculating the award of prejudgment interest.  According to Shell, he was entitled to prejudgment interest at a rate of seven percent per annum.  He adds that the court erred in reducing the amount of damages awarded on his conversion claim by limiting the prejudgment interest to 13 days.  We agree only with the first contention.

" ' "Conversion is the wrongful exercise of dominion over the property of another." ' "  (*Welco Electronics, Inc. v. Mora* (2014) 223 Cal.App.4th 202, 208.)  Civil Code section 3336 states, in pertinent part:  "The detriment caused by the wrongful conversion of personal property is presumed to be:  [¶]  [T]he value of the property at the time of the conversion, with the interest from that time."  Thus, a successful plaintiff in an action for conversion is entitled to recover prejudgment interest from the time of the conversion.  (*Irving Nelkin & Co. v. South Beverly Hills Wilshire Jewelry & Loan* (2005) 129 Cal.App.4th 692, 694, 702.)  The legal rate of interest in California, absent a statute to the contrary, is seven percent per annum.  (See Cal. Const. art. XV, § 1; *Pacific-*

*Southern Mortgage Trust Co. v. Ins. Co. of North America* (1985) 166 Cal.App.3d 703, 716; see *Stan Lee Trading, Inc. v. Holtz* (C.D. Cal. 1986) 649 F.Supp. 577, 582-583 [awarding prejudgment interest at a rate of seven percent per annum for conversion claim].)

Because there is no statute providing a rate of prejudgment interest for a conversion claim, the seven percent rate specified in the California Constitution applies. Thus, the trial court erred in applying a one-and-a-half percent rate in calculating the prejudgment interest award. As a consequence, we must reverse the award of prejudgment interest on the conversion claim and remand to the trial court for the limited purpose of recalculation. We find no merit in the remaining contention raised by Shell. He failed to provide reasoned legal analysis showing error or injury from the trial court's limitation of prejudgment interest to a 13-day period. (*City of Santa Maria, supra,* 211 Cal.App.4th at pp. 286-287.)

We reject defendants' contention that reversal is not required because Shell suffered no prejudice from any error related to his conversion claim, since the record demonstrates that the full amount of VDLG's debt had been repaid prior to the conversion of the R Street legal fees. This argument has been waived because it was not raised in the trial court. (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564 [issues raised for the first time on appeal which were not litigated in the trial court are waived].) Moreover, the argument is improper because, "[a]s a general matter, 'a respondent who has not appealed from the judgment may not urge error on appeal.' " (*Estate of Powell* (2000) 83 Cal.App.4th 1434, 1439.) A limited exception to this rule applies where the respondent urges error in a trial court ruling "for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken." (Code Civ. Proc., § 906.) " ' "The purpose of the statutory exception is to allow a respondent to assert a legal theory which may result

24

in *affirmance* of the judgment." ' " (*Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1121, italics added; see *Mayer v. C.W. Driver* (2002) 98 Cal.App.4th 48, 57 [without filing a separate cross-appeal, a respondent may properly raise an argument that shows the trial court reached the right result, "even if on the wrong theory"].)  The limited statutory exception does not apply here because, if we were to agree with defendants' argument, the result would *not* be affirmance of the judgment on a different legal theory.  For this same reason, we also reject defendants' contentions that reversal is not required because Shell suffered no prejudice from any error related to his conversion claim, as the trial court erroneously determined that there was a valid assignment of the R Street legal fees, and, even if there was a valid assignment, Shell suffered no damage.  Again, if we agreed with defendants, the result would *not* be affirmance of the judgment on a different legal theory.[7]

V

*Punitive Damages*

A successful plaintiff in a conversion action is entitled to recover, among other things, punitive damages upon a showing of malice, fraud, or oppression.  (*Voris v. Lampert* (2019) 7 Cal.5th 1141, 1150-1151.)  On appeal, Shell contends, without elaboration, that the trial court erred in failing to consider whether punitive damages were appropriate on his conversion claim against VDLG.  We find no reversible error.

As an initial matter, we conclude that Shell has waived his cursory claim of error by failing to support it with reasoned argument and citation to authority.  (*Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1303.)  "An appellate court is not required to consider alleged errors where the appellant merely complains of them without

---

[7] We have no occasion to express an opinion on the validity of the trial court's decision to enter judgment in favor of Shell on his conversion claim against VDLG, as that issue is not before us on appeal.

25

pertinent argument." (*Strutt v. Ontario Sav. & Loan Assn.* (1972) 28 Cal.App.3d 866, 873.) "One cannot simply say the [trial] court erred, and leave it up to the appellate court to figure out why." (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368.)

In any event, the claim has no merit. Following trial, the trial court issued a tentative posttrial statement of decision, ruling in favor of Shell on his conversion claim against VDLG and awarding prejudgment interest in the sum of $7.16. There was no mention of punitive damages as to this claim. The only portion of the tentative decision addressing punitive damages, reads, in its entirety, as follows: "As the fraud claims fail, the court need not wade into the thicket of the claim for punitive damages, which is dependent upon the fraud cause of action." In response, Shell requested a statement of decision, but did *not* request the court decide the controverted issue of whether he was entitled to punitive damages on his conversion claim against VDLG. The trial court subsequently issued a final posttrial statement of decision that was unchanged with respect to the issue of punitive damages. Shell objected to the final posttrial statement of decision, insisting that a hearing was required on punitive damages as to his conversion claim against VDLG. The record does not reflect that any such hearing was held. The trial court did not modify the final posttrial statement of decision with regard to punitive damages.

On this record, Shell waived any challenge to the adequacy of the statement of decision with regard to punitive damages as to his conversion claim by failing to follow the required two-step procedure to preserve challenges for appellate review. (See *Thompson v. Asimos, supra*, 6 Cal.App.5th at pp. 981-983 [describing two-step procedure].) We will, therefore, apply the presumption of correctness generally accorded trial court judgments on appeal. Under this presumption, the doctrine of implied findings requires that we infer the trial court made factual findings favorable to defendants on all issues necessary to support the judgment and that we review those findings under the substantial evidence standard. (*Id*. at pp. 984-985.) Shell makes no attempt to show that

26

the trial court's implied finding that punitive damages were not warranted on his conversion claim is not supported by substantial evidence. Indeed, the lack of a complete reporter's transcript precludes Shell from making such a showing. We presume the unreported trial testimony demonstrates the absence of error and the evidence was sufficient to support the judgment. (*Estate of Fain*, *supra*, 75 Cal.App.4th at p. 992.)

## DISPOSITION

The trial court's award of prejudgment interest on the conversion claim is reversed. The matter is remanded for the court to redetermine the prejudgment interest at a rate of seven percent per annum. In all other respects, the judgment is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3).)


　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　Duarte, J.



We concur:



　　/s/
Robie, Acting P. J.



　　/s/
Murray, J.